ABEL B. CLEMENT, DEFENDANT IN ERROR, v. BENJAMIN BETTLE ET AL., PLAINTIFFS IN ERROR.

Submitted December 11, 1900—Decided March 4, 1901.

1. The open, notorious, continued and adverse use of a driveway and foot-path across the lands of another, from a residence or place of business to a public road for more than twenty years, affords a conclusive presumption of a written grant of such right of way.

2.  If the owner of the dominant tenement desires to defeat such presumption, the burden is upon him of showing that such user began by permission, and was not under a claim of right.

3.  A partial interference with such user and a denial of the right, accompanied with a written notice from the owner of the land, that the way will be closed at a definite time, justifies the plaintiff in testing his claim to such right of way in the proper judicial tribunals.

On error to the Gloucester County Circuit Court, upon a judgment on verdict rendered in a cause tried in said court, where the right to use a certain road or private way was in issue.

For the plaintiffs in error, *John W. Wescott* and *Francis D. Weaver.*

For the defendant in error, *Robert S. Clymer.*

The opinion of the court was delivered by

VOORHEES, J.   The plaintiff below claimed that he had a right to use a road or way across the defendants' land to go to and from his farm to a certain public road. The defendants denied this right by a plea of general use. At the trial a number of witnesses testified to the use of this road by the plaintiff and those from whom he derived title, continuously, openly and under a claim of right in going to and coming from the plaintiff's farm, both in wagons and on foot, for over twenty years; some testifying to such use for over fifty years, and others seventy years before the suit was brought. The plaintiff testified that the defendants had plowed up to the actual wagon tracks in such a way that sods fell into the wagon ruts and obstructed his use of the road, and that "by reason thereof you had to walk over it or it would shake a man out of the wagon; that everybody who came in complained of it; that they plowed up the foot-path and when he remonstrated with them they swore at him; that limbs and cuttings from trees were thrown into the foot-path, and that the defendants had served him with a written notice that at a certain time in the notice mentioned they would shut the

road off from travel by him and all other persons." At the close of the plaintiff's case the defendants' counsel moved for a nonsuit upon the ground that no interference with his use of the road had been shown, which motion the court denied, and one of the assignments of error is upon this refusal. The plaintiff had procured evidence of his right to use the road, of obstructions placed in the road by the defendants, of a destruction of the foot-path and of a service of a written notice forbidding him to use the road after a date therein specified. There was certainly evidence to go to the jury of the existence of a right and the denial thereof and interference with its use by the defendants, and the court properly refused the motion and put the defendants on their defence.

Where there is a partial interference with the use and a written denial of the right, action may be begun. The party claiming such right is not required to wait until he is forcibly deprived of the whole of such use before testing his right in the proper judicial tribunals. The necessary delay attending such procedure may be a great injury to him and deprive him of the use for a considerable time.

The defence produced no evidence denying the plaintiff's right to the use of this road, and the jury found a verdict for plaintiff of nominal damages. The principal assignment of error in the trial was the introduction of certain testimony showing an interference with the surveyor in surveying this road, which interference occurred after suit was brought. No exception was taken when this testimony was offered, and the court referring to it in the charge to the jury could not have injured the defendants; it had been admitted without objection and was before the jury. One assignment of error in the charge was that the trial judge spoke of the road as a by-road, when the declaration demanded only a private right of way; the evidence showed that it was not a *cul-de-sac* ending at the plaintiff's farm, but a way connecting two public roads, and that the public, as well as the plaintiff, had used it to pass from one of these public thoroughfares to the other and to the plaintiff's farm for over fifty years.

This expression was strictly in accordance with the evidence and could not have affected the defendants, for the only right involved in the proceedings was the private right of the plaintiff and that only could be settled by the judgment. The only other assignment of error which it seems necessary to consider was that the trial judge told the jury that the burden of showing that the plaintiff's use of this road was by permission, was upon the defendants. The plaintiff had produced evidence which showed a prescriptive right in him to use the road as he had been using it. The user necessary to establish a prescriptive right must be contrary to the interest of the owner under a claim of right, the true owner knowing of such user and acquiescing therein by not objecting thereto, and the user must be of such a nature as to indicate that a right is claimed against such owner. The law on this subject has been most ably and learnedly expounded in this state in *Cobb* v. *Davenport,* 4 *Vroom* 223; *Lehigh Valley Railroad Co.* v. *McFarlan,* 14 *Id.* 605, and in *Wood* v. *Hurd,* 5 *Id.* 87.

When the plaintiff had proved twenty years' open, notorious continuous, public, peaceable and uninterrupted use of this road he had established a legal presumption of right to use the same and a prescriptive or written grant to use it, which grant had been lost or mislaid; it conferred an indefeasible right and a technical common law reason for not disturbing his long continued open enjoyment. *Dalton* v. *Angus,* 6 *App. Cas.* 740 (*Lindley, J.*)

Prescription is a title acquired by use or possession had during the time and in the manner fixed by law, and in the stricter sense applies only to incorporeal hereditaments or such species of easements or liberties without profit which a person may enjoy in the soil of another without obtaining an interest in the land itself. 2 *Greenl. Evid.,* ¶ 537; 2 *Greenl. Cru. Dig., tit. XXXI., ch.* 1, § 5.

The time through which the possession or user should continue to found a prescription was defined in the quaint language of the old law to be, "That whereof the memory of

man runneth not to the contrary," which was fixed at the beginning of the reign of King Richard I.

The inconvenience of proving this great length of time was apparent to the courts and has been obviated in practice by introducing a new kind of title, namely, the presumption of a grant made and lost, and this practice, by analogy with the statutes of limitation in titles to real property, has limited the time to twenty years' adverse, open, notorious, exclusive and uninterrupted enjoyment, and the defendants could not overcome this presumption by proof or denial of the grant; they might attempt to rebut it by explaining the facts upon which it rests, but the open, known and uninterrupted use for twenty years affords a conclusive presumption of a grant to be applied as a *presumptio juris et de jure,* not only to authorize but to require the jury to presume a grant. The learned judge did not err, therefore, in stating that if the defendant intended to insist that the plaintiff's long continued and adverse user had not ripened into a legal right, because it began by permission, then the burden was on the defendant of showing such permission.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, BOGERT, KRUEGER, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 15.

*For reversal*—None.