DOROTHY E. JONES, Complainant-Appellee, v.
HARRY ROSS and Wife, VIRGINIA D. ROSS,
Defendants-Appellants. —388 S.W.(2d) 640.

Western Section. October 2, 1963.

Certiorari Denied by Supreme Court March 5, 1964.

Wils Davis, Earl P. Davis and H. C. Tanner Davis, Memphis, for defendants-appellants.

Hanover, Hanover, Hanover & Walsh, Memphis, for complainant-appellee.

CARNEY, J. The defendants below, Harry Ross and wife, Virginia D. Ross, have appealed from a decree of the Chancery Court ordering them to remove a brick wall. The wall had been erected by defendants, Ross and wife, down the concrete driveway situated between their home and that of the complainant, Mrs. Dorothy Jones, for the express purpose of excluding the complainant, Mrs. Jones, from use of the driveway. The homes are located on the north side of Peabody Avenue in Memphis, Tennessee.

The complainant Jones is the owner of the lot known as 1264 Peabody Avenue and the defendants, Ross and wife, are the owners of the lot known as 1258 Peabody. The Ross lot lies immediately west of the Jones lot. On October 5, 1954, Mr. and Mrs. Ross purchased their house

and lot from the heirs of Leon Sternberger. At the time of the purchase in 1954 the lot now owned by Mrs. Dorothy Jones was owned by a Mrs. Baker. The complainant, Mrs. Dorothy Jones, purchased her lot from Mrs. Baker on July 7, 1962. None of the deeds in either chain of title mentions the driveway.

At the time Mr. and Mrs. Ross purchased their house and lot on October 5, 1954, there was an eight foot concrete driveway leading northward from Peabody Avenue back approximately even with the back or north walls of the two houses. At this point the driveway entered into a "Y" with the right or east prong turning eastward behind the Baker house now owned by Jones and the left or west prong turning westward behind the house of Mr. and Mrs. Ross, the appellants. While Mrs. Baker did not own an automobile, yet her guests customarily used the driveway to and from her home. Taxicabs called by Mrs. Baker were accustomed to using the driveway and delivery trucks used the driveway to make delivery of articles to the home of Mrs. Baker.

In 1904 Mr. Leon Sternberger purchased the west lot at 1258 Peabody which is the property now owned by the appellants, Mr. and Mrs. Ross. About the same time Mrs. J. D. Levy, mother of Mrs. Sternberger, purchased the east lot now owned by Jones. Each constructed homes on these two lots. The homes are almost identical. There was no driveway leading from Peabody Avenue at the time of the construction of these two homes. Horses and buggies were the means of conveyance and access to the two lots was obtained from an alley which runs parallel with Peabody Avenue along the north side of the two lots.

In 1914 Mr. Sternberger bought an automobile, disposed of his horse and buggy and constructed the eight

foot concrete driveway between the two homes running northward from Peabody. He converted the stable at the back of his lot into a garage. Mr. Sternberger and his family continued in the ownership of this property until October 5, 1954, when it was sold to Mr. and Mrs. Ross as above set out.

Mrs. Levy never owned an automobile. The coal bins for the home were on the northwest side of her home and coal was delivered to the home of Mrs. Levy by trucks over this driveway between the two homes. After the property passed from the ownership of the Levys, first into Sanders in 1942 and later into Baker and finally into the complainant, Dorothy Jones, all of the owners of the east lot and their visitors and friends used the driveway without any objection on the part of the owners of the west lot continuously until the fall of 1962.

The complainant, Dorothy Jones, bought the property in July, 1962. She converted the Levy home into a boarding house and had some seven or eight men boarders. She advertised off-street parking for her boarders and several of the boarders had automobiles which they parked in the back yard of the Jones property. They used the concrete driveway between the two houses for access to and from the parking area in the back of the Jones home.

These two lots are located just south of Crump Stadium in Memphis, Tennessee, and during the 1962 football season a great deal of congestion occurred all around this property. The record indicates some disagreement between Mrs. Jones and Mr. and Mrs. Ross over the use of the driveway by the respective parties in offering off-street parking to patrons of Crump Stadium in their

respective back yards. As a direct result of this disagreement Mr. and Mrs. Ross had their property surveyed.

Their survey showed that 1.3 feet of the concrete driveway was on Mrs. Jones' property and that 6.7 feet of the concrete driveway was over on the Ross side of the line. In order to prevent Mrs. Jones and her boarders from using the back yard Mr. and Mrs. Ross built a brick fence down the driveway within their property line so as to obstruct the passage by Mrs. Jones and her boarders along the driveway into her back yard. Mrs. Jones brought the suit in the present case seeking a mandatory injunction requiring Mr. and Mrs. Ross to remove the obstruction.

It is clear that there is insufficient width between the west side of Mrs. Jones' property and her west property line to construct a driveway and admit the passage of automobiles from Peabody Avenue to her back yard. The defendants, Mr. and Mrs. Ross, had to remove a porch from the east side of their residence in order to obtain access for automobiles from Peabody Avenue along the concrete driveway on their side of the fence to their back yard and garage. It is the contention of the defendants, Mr. and Mrs. Ross, that Mrs. Jones has convenient access for automobiles to her back yard by way of the alley running parallel with Peabody Avenue along the north side of her lot.

It was further the contention of the defendants, Mr. and Mrs. Ross, in the court below and it is their contention in this court that the use of the driveway by predecessors in title of the complainant, Mrs. Jones, for a period of nearly fifty years was by permission only and that neither Mrs. Jones nor her predecessors in title obtained any proprietary right to the use of that portion

of the driveway located on the defendants' property. They cite and rely upon the following cases:

Pyron v. Colbert, 46 Tenn.App. 287, 328 S.W.(2d) 825; Line v. Miller, 43 Tenn.App. 349, 309 S.W.(2d) 376; Blakemore v. Matthews, 154 Tenn. 334, 285 S.W. 567; Bowles v. Chapman, 180 Tenn. 321, 175 S.W.(2d) 313.

His Honor the Chancellor took a contrary view, sustained the bill of the complainant and ordered the fence removed. Defendants, Mr. and Mrs. Ross, have appealed and assigned error. Assignments I, II and III challenge the correctness of His Honor's decision sustaining the original bill. Assignments of error IV and V complain of the admissibility of evidence.

Appellee relied upon Jones v. Whitaker, 12 Tenn.App. 551. His Honor the Chancellor quite correctly differentiated Jones v. Whitaker from the case at bar. In the Jones case the owner of two lots on McLean Avenue in Memphis, Tennessee, erected houses and made a joint driveway between them. The driveway was located partly on one lot and partly on another. These houses were subsequently sold to different parties and their successors in title had a dispute about the driveway and one of them attempted to block the use of the driveway by the other. The joint driveway had been used by the occupants of each lot for a period of about twenty years.

This section of the Court of Appeals held that the respective purchasers of the lots bought them with knowledge of the easements in so much of the respective lots as was occupied by the driveway; that said easements were apparent, had been continuous and were necessary to the reasonable use and enjoyment of each

lot and the defendant was required to remove the obstruction. As said by the Chancellor Jones v. Whitaker would be entirely applicable to the case at bar except for the fact that there was no unity of title of the two lots at the time the joint driveway was constructed.

However, the court cited LaRue v. Greene County Bank, 179 Tenn. 394, 166 S.W.(2d) 1044, and Heiskell v. Cobb, 58 Tenn. 638, as recognizing the rule that easements of water rights, party walls, etc. could be created even though there is not the common ownership. From the opinion of the Chancellor we quote as follows:

"The proof reflects that before Ross bought the property in question, there was made a survey by the firm of Ferguson & Crabb, and the sketch reflects this concrete party driveway of the type and character as it presently exists, and so the question is whether or not, there being no original unity of title, but the Rosses having acquired the property with knowledge of this joint use, whether or not they are estopped now to deny to the complainant the joint privilege of using that driveway.

"The Court has been unable to find any case in Tennessee involving the lack of unity as in Jones v. Whitaker. However, in the 155 ALR, page 543, [224] 24 N.C., page 480, 31 S.E.(2d) 517, Packard v. Smart, the Annotator commenting on this case says:

" 'The number of cases dealing with this particular question, either expressly or by necessary implication, is relatively small. Insofar as it is permissible to attempt to deduce a general rule from such a small number of decisions, none of which contains a thorough discussion of the problem, it seems that by the

majority of decisions the visible easement rule is held applicable to reciprocal easements resulting from common development and use of adjoining properties regardless of the fact that title to the properties was not vested in a common owner at the time of the creation of the easement.' `

"In Packard v. Smart, in 155 ALR, at page 540, the Court quotes therein from an English case as follows:

" 'The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind or created a charge which could be enforced in equity against him takes the title subject to all easements, equities, and charges, however created, of which he has notice. [Sharp v. Cheatham] 88 Mo. [498] 57, American Republic, supra. Lord Cottenham said in Tulk v. Moxhay, (2 Phil, English Chancery 774): "If an equity is attached to property by the owner no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." But although the covenant, when regarded as a contract, is binding only between the original parties, yet, in order to give effect to their intention it may be construed by equity as creating an incorporeal hereditament (in the form of an easement) out of the unconveyed estate and rendering it appurtenant to estate conveyed; and when this is the case, subsequent assignees will have the rights and be subject to the obligations which the title or liability to such easements creates. A purchaser of land with notice of a right of interest in it existing only by agreement with his vendor is

bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to the estate of which he had notice when he became the purchaser.' (Citing cases.)

"Therefore, the Bill of Complainant will be sustained, and an Injunction will issue requiring the defendants to remove the fence or wall presently existing."

The appellants rely very strongly upon the case of Pyron v. Colbert, 46 Tenn.App. 287, 328 S.W.(2d) 825. In that case the predecessors in title of the complainants, Pyron, and wife, built a driveway on their property which by mistake encroached about two feet on the property of the adjoining landowner. There was no common driveway. For a period of over ten years the owners of the adjoining property permitted complainants' predecessors in title to use the driveway even though it encroached upon their property. The defendants, Mr. and Mrs. Colbert, owners of the adjoining property put a fence along the north line of their property thereby cutting off a part of the driveway which Mr. and Mrs. Pyron had previously used for entrance to and exit from their property on Highway 61 South in Shelby County, Tennessee.

The evidence showed clearly that the driveway encroached across the line by mistake. At that time the two pieces of property were owned by brothers. This court, speaking through Judge Bejach, found that all of the subsequent use of that portion of the driveway which encroached upon defendants' driveway was by permission only and under no claim of adverse user. Hence, the

defendant owner had the legal right to fence in his property and the decree of the lower court dismissing the injunction was affirmed. The principal differences between the case of Pyron v. Colbert and the present case is that the driveway in the Pyron case was neither constructed nor used as a common driveway and that it encroached upon the adjoining property by mistake.

The Chancellor below found that the disputed driveway was constructed by Mr. Leon Sternberger as a joint driveway and was jointly used by himself and members of the Levy family and their successors in title continuously for a period of almost 50 years without a dispute. This finding was based largely upon the testimony of Mr. David Sternberger that the driveway was completed in 1914 after his father bought an automobile and was used jointly by the two families until 1942 when the easternmost lot owned by his grandmother, Mrs. Levy, and now owned by the complainant, Mrs. Jones, was sold to Sanders. From 1942 until 1954 when the Sternbergers sold the western lot to defendant, Ross and wife, the occupants of the Levy home used the joint driveway for ingress and egress. After Ross and wife bought the Sternberger home in 1954 occupants of the Levy home continued to use the joint driveway for ingress and egress until the fall of 1962 when the dispute arose.

In Line v. Miller (1957) 43 Tenn.App. 349, 309 S.W. (2d) 376, opinion by McAmis, P. J., the Eastern Section of this court held that the complainant was not entitled to enjoin the interference with a sewer line which ran from her home across defendants' property to a street sewer. Judge McAmis stated the majority rule as to subterranean drains to be there is no such necessity as to suppose the parties intended to provide an easement over adjoin-

ing property and that an easement is not created by implied grant or reservation, notwithstanding a drain existed at the time of severance by conveyance if a substitute drain can be provided at reasonable expense. The court then held that since the proof showed that the complainant could procure another drain for $300.00 or less it could not be supposed that the parties intended to create an appurtenant easement on adjoining lots.

In the present case it is admitted that the complainant cannot construct a driveway from Peabody Avenue to her back yard without tearing down a portion of her home and that the use of the alley for access would be most inconvenient and unsatisfactory because it is narrow and often blocked by parked vehicles, etc. Therefore, we think that the rule in Line v. Miller is not controlling of the case at bar.

We have read the cases of Blakemore v. Matthews, 154 Tenn. 334, 285 S.W. 567, and Bowles v. Chapman, 180 Tenn. 321, 175 S.W.(2d) 313, relied upon by appellants. In each of these cases complainants claimed a right of way over property of the defendants by virtue of user by themselves and their predecessors for over twenty years. In each of these cases, however, the court found that the complainants and their predecessors used the road only by permission and failed to prove notice of a claim of right to use to the owner of the servient estate.

Nor do we find the cases of Blakemore v. Matthews, 154 Tenn. 334, 285 S.W. 567, and Bowles v. Chapman, 180 Tenn. 321, 175 S.W.(2d) 313, relied upon by appellants, to be in point. Neither of these cases involved the joint use of a driveway or roadway which was located partly on the property or the land of both adjoining landowners.

We find the equities in this case in favor of the complainant. The appellants, Ross and wife, at the time they purchased their property in 1954, had a survey of their property. They learned that the concrete driveway was located partially on the property now owned by the complainant, Mrs. Jones, and they learned that the concrete driveway was then being used and had been used for many years as a common driveway by the owners of both lots. The defendants, Ross and wife, purchased their property with full knowledge of such common use of the driveway and without any objection thereto. They acquiesced in the common use of the driveway from the time of their purchase in 1954 until the fall of 1962 before any question was ever raised by them that the owners of the property immediately to the east had no right to the use of the common driveway. Conversely the complainant, Mrs. Dorothy Jones, purchased the Levy lot fully believing that as such purchaser she would be entitled to use the concrete driveway for ingress and egress to and from her property. She and her tenants did use the driveway for such purposes for a short while until the dispute occurred between her and Ross and wife.

We think His Honor correctly held that the complainant was entitled to injunctive relief requiring the defendants to remove the brick wall as an obstruction of the driveway. However, we feel that a sounder basis upon which to predicate the relief granted would be on the basis of easement by prescription rather than easement by estoppel.

Apparently the court below did not consider the question of the establishment of reciprocal easements by prescription and the solicitors have not argued the

theory before this court. The general rule is stated in 28 C.J.S. Easements sec. 18(j.) page 673:

"j. Mutual Way between Adjoining Landowners

"The mutual use by adjoining landowners of a way laid out between their lands, each devoting a part of his land to the purpose, will generally be considered adverse to a separate and exclusive use of the way by either owner.

"As stated in Corpus Juris, which has been cited and quoted with approval, while there are some decisions to the contrary, the weight of authority is to the effect that, where adjoining proprietors lay out a way or alley between their lands, each devoting a part of his own land to that purpose, and the way or alley is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close the part which is on his own land; and in these circumstances the mutual use of the whole of the way or alley will be considered adverse to a separate and exclusive use by either party. However, where the owners of land used an alleyway for their mutual convenience, the user being occasional, permissive, and for broken periods of time, no right of way in the alley was established by prescription."

The same rule is announced in 17 Am. Jur., 682—EASEMENTS, Section 70:

"Private Ways, Generally; Use in Common by Adjacent Owners.—As is true of easements generally, it is well established that rights of way may be acquired by prescription. The presumption of grant heretofore referred to generally is applied in respect of private ways. While theoretically a right of way cannot be

acquired by the operation of the statute of limitations, since it is not a subject of constant, exclusive, and adverse possession, if a way has been enjoyed for a long time under circumstances which would be sufficient, under the local statute of limitations, to bar a recovery of real estate, there is a presumption of grant, the evidence of which has been lost.

"In the great majority of cases in which a lane, private road, alley, driveway, or passageway lying over and along the boundary between lots or tracts of land has been used without interruption by the adjoining owners for the full prescriptive period, and for a common purpose, and without any oral agreement therefor being shown, the user of each owner has been regarded as adverse to the other and the claim of a prescriptive easement by either party against the other has been upheld. There is, however, some authority to the contrary. However, a use by adjoining owners, and for a common purpose, of a strip of land lying over and along their boundary, occurring pursuant to an oral agreement, may or may not certain the elements of adverse use as between the owners. The inquiry in such a case depends upon the terms and true intent of the agreement and upon the circumstances and the facts relative to the use."

There is a recent annotation in 27 A.L.R.(2d) 332 entitled "Rights derived from use by adjoining owners for driveway, or other common purpose, of strip of land lying over and along their boundary."

The reported case of Plaza v. Flak, et al, New Jersey Supreme Court, May 28, 1951, 7 N.J. 215, 81 A.(2d) 137, 27 A.L.R.(2d) 324, presents a set of facts which are in many respects similar to the facts and circumstances

of the instant case. The New Jersey Supreme Court affirmed the decree of the lower Chancery Court ordering a defendant to remove a fence which he had erected along his property line down the center of an alleyway which had been used by the owners of adjacent property for many years. We quote extensively from the opinion of the New Jersey Supreme Court as follows:

"The parties to this litigation are the owners of adjoining improved lots situate on Van Buren Street in the City of Passaic. The improvement on each lot consists primarily of a two family house. Between these two structures there exists an area-way 4.75 feet in width, approximately bisected by the joint property line of the premises. It was stipulated at the trial that common owners of the two properties caused both the houses to be erected at the same time, some 38 or 40 years before the trial of this matter. The common owners conveyed out the property now owned by plaintiff to his predecessor in title on April 27, 1914, and that now owned by defendants to their predecessor in title on May 7, 1915. The area between the two houses was used in common as an alleyway by the owners and tenants of both properties until 1948 when the defendants erected a fence on the boundary line in the approximate center of the area. The plaintiff instituted this action to obtain a judgment compelling defendants to remove this fence, and defendants counterclaimed, seeking by that means to require plaintiff to remove another fence which extends for 10 feet along the rear portion of the joint boundary line, which latter fence encroaches upon the defendants' property. Counsel for both parties signed the pretrial order waiving any rights which either of them may have had to a trial by jury. A trial to the court con-

cluded in a judgment of the Chancery Division of the Superior Court filed on February 2, 1951, granting the relief sought by the plaintiff and denying the relief sought by the defendants in their counterclaim. Defendants appealed from the whole of the judgment to the Appellate Division of the Superior Court and while awaiting consideration there the matter was certified to this court upon our own motion.

\* \* \* \* \* \*

"The gist of plaintiff's claim is that he has acquired an easement by prescription over that portion of defendants' premises contained within the area or alleyway between the parties' houses. It is well understood that 'prescription' is the term usually applied to the acquisition of incorporeal hereditaments by adverse user, while 'adverse possession' is the term applied in matters concerning title to lands. Black's Law Dict. 3rd ed. (1933), p. 1405. Compare Clement v. Bettle, 65 N.J.L. 675, 678, 48 A. 567 (E. & A.1901) ; 1 Thompson on Real Property, Perm Ed. (1939) sec. 414, pp. 675, 677. Prescription has been a subject of discussion in our courts with some degree of regularity, hence it is necessary only to refer here to the principles laid down in the decisions, and not to repeat the history and development of this phase of our law. The American and English authorities are analyzed in Lehigh Valley R. R. Co. v. McFarlan, 43 N.J.L. 605, 617-630 (E. & A.1881).

"At an early date, it was laid down that the doctrine of prescription is based upon an analogy to the statutes of limitation which are concerned with adverse possession of land, although originally stemming from a theory or legal fiction of lost grant, which latter

theory is more or less in disrepute today, and is dependent upon the same principles as adverse possession. Cobb v. Davenport, 32 N.J.L. 369, 385, 387 (Sup. Ct.1867). This is likewise the general view. 17 Am.Jur. Easements, sec. 55; 1 Thompson on Real Property, Perm.Ed. (1939) sec. 415; pp. 677-680; Minor on Real Property, 2nd ed., Ribble (1928), Vol. II, sec. 984; Commentaries on Law of Real Property, Walsh (1947) Vol. II, sec. 238; Burby on Real Property (1943), sec. 68; 16 Harv.L.Rev. 438, 439.

"Therefore, there must exist a user that is adverse, hostile, continuous, uninterrupted, visible and notorious. Cobb v. Davenport, supra, 32 N.J.L. at page 385; DeLuca v. Melin, 103 N.J.L. 140, 144, 134 A. 735 (E. & A. 1926). This must be a continuing, open, visible and exclusive user, hostile, showing intent to claim as against the true owner, and must be under a claim of right with such circumstances of notoriety as that the person against whom it is exercised may be so aware of the fact as to enable him to resist the acquisition of the right before the period of prescription has elapsed. Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 588, 76 A.(2d) 808 (1950); Carlisle v. Cooper, 21 N.J. Eq. 576, 596, (E. & A.1870).

"Although there are some decisions elsewhere to the contrary, the general rule to be drawn from the authorities is that where adjoining proprietors lay out a way or alley between their lands, each devoting some portion of his premises to that purpose, and such area is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close that portion of the area which is within the boundary of his own land. The mutual use of the whole

of such alley or way will be considered adverse to a separate or exclusive use by either. 28 C.J.S. Easements sec. 18, page 673; Johnson v. Whelan, 171 Okl. 243, 42 P.(2d) 882, 98 A.L.R. 1096 (Okl.Sup.Ct.1935); Anno. 98 A.L.R. 1098-1103. Compare 1 Thompson on Real Property, Perm.Ed.(1939) sec. 422, p. 697.

"From an early period in this State although the burden of proof of the elements of prescription is upon the party claiming the right to an easement by prescription, it has been held that a presumption of adverse use arises from uninterrupted user of twenty years or more, and the burden is then upon the opposing party to rebut the presumption. This he may do by contradicting or explaining the facts upon which it rests, but not by proof in denial of a grant, i. e., the grant assumed in the faction of prescription, or he may prove the use was contentious or interrupted during the period of prescription. He may overcome the presumption of adverse use and the right to the easement arising therefrom by proof of permission asked and granted, that it was secret user, or that it was such use as to be neither physically capable of prevention or of action. Lehigh Valley R. R. Co. v. McFarlan, supra, 43 N.J.L. at page 621; Clement v. Bettle, supra, 65 N.J.L. at pages 678-679, 48 A. at pages 567, 568; National Silk Dyeing Co. v. Grobart, 117 N.J.Eq. 156, 164, 175 A. 91 (Ch.1934); DeLuca v. Melin, supra. Compare 29 Harv.L.Rev. 88, 89; 1 Thompson on Real Property, Perm.Ed. (1939) sec. 418, pp. 683-686, sec. 435, p. 716, sec. 436, pp. 718-721; 2 Thompson on Real Property, Perm. Ed. (1939) sec. 525, pp. 114, 115. There appears to be a conflict of authority elsewhere concerning the presumption to be drawn from the open, continuous, exclusive and uninterrupted use by the adverse claim-

ant for the prescriptive period. Some jurisdictions adhere to the presumption of adverse use, and some to the presumption of permissive use. Univ. of Chicago L.Rev. Vol. 17, p. 211 (1949). Compare Poulos v. F. H. Hill Co., 401 Ill. 204, 81 N.E.(2d) 854, 859 (Sup.Ct.Ill. 1948). It is suggested by the defendants that New Jersey is among the latter, by virtue of Weber v. Gerber Holding Co., 138 N.J.Eq. 544, 547-548, 49 A.(2d) 300 (Ch.1946) reversed on the ground that the former Court of Chancery lacked jurisdiction, sub nomine Weber v. L. G. Trucking Corp., in 140 N.J.Eq. 96, 52 A.(2d) 839 (E. & A.1947). Compare 1 Rutgers L.Rev. 313 (1947), wherein the author discussed the Weber case, but considered the decision insufficient to show adherence to the theory of permissive use. See also III Intramural L.Rev. (N.Y.U.) 176, 180-181 (1948) wherein the author also discussing the Weber case, concludes that New Jersey continues to stand on the theory of the presumption of adverse use. It is to be noted that the decision of the former Court of Chancery in the Weber case, supra, 138 N.J.Eq. at page 547, 49 A.(2d) at page 300, affirmed the preexisting rule stated in Clement v. Bettle, supra, but asserted that the circumstances of the Weber case required a different presumption. The decision in the Weber case appears to have been grounded on the rule that the determination whether the possession is sufficiently hostile and notorious to oust the true owner depends upon the situation and condition of the property and the uses to which the true owner designedly or permissively subjects it. Cobb v. Davenport, supra, 32 N.J.L. at page 385; compare Pirman v. Confer, 273 N.Y. 357, 7 N.E.(2d) 262, 111 A.L.R. 216, 220 (Anno. at p. 221 et seq.). This latter

rule was recently reaffirmed by us in Poulos v. Dover Boiler & Plate Fabricators, supra.

"From an analysis of the authorities above cited it appears: first, that the plaintiff has the burden of sustaining his claim of adverse user; second, when the plaintiff or the one claiming the right to an easement by prescription shows open, continuous, uninterrupted, exclusive use for the prescriptive period with the acquiescence of the owner of the servient estate, he has carried his initial burden and a presumption arises that the use was adverse, the burden of adducing evidence contrary to that presumption thus being cast upon the opposing party. The burden of proof remains upon the plaintiff to establish the prescription by the preponderance of the evidence. Compare on the effect of presumption in general Abbott's Civil Jury Trials, 5th Ed., Viesselman (1935), sec. 179, p. 411, sec. 188, p. 424; Summary of American Law, Clark (1947), secs. 63, 64, pp. 602, 604; and third, there is a conflicting presumption with the foregoing rule which may arise where the situation and condition of the land and the uses thereof place the property in the category of vacant, unimproved land, unenclosed, where the use is casual rather than customary. Where land is in that category the use is presumed to have been permissive. We do not have a situation such as is included within the latter rule here. Cf. Poulos v. F. H. Hill Co., supra, 81 N.E.(2d) at page 859.

"An examination of the evidence in the record before us shows that plaintiff's use and that of his predecessors in title of defendants' portion of the alleyway, was continuous, open and notorious for approximately 34 years, more than the prescriptive period. This was

not contested, and was indeed supported by defendants' proofs. Defendants however place emphasis on the requirement that the use be exclusive, hostile, with intent to claim as against the true owner, and such as to put defendants on their guard that they might eventually suffer an easement to exist by prescription in their portion of the alleyway. The elements of proof of the latter factors clearly exist in this case. There was never any objection to the use, although it was not concealed; there was no reason to conceal it; there were no agreements concerning the use of the alleyway; 'There was no permission; we just used it.' It is inescapable from a reading of the entire testimony before us that plaintiff's and his predecessor's use was under claim of right and with the intent to claim that right against the true owner, and that it was such use as should have warned defendants that plaintiff might acquire a prescriptive easement. On the other hand, defendants make no proof concerning permissive use. On the contrary they show no permission was asked or given. It is suggested that their proofs tend to show permissive use in that the alleyway was paved by the joint owners at or near the time the dwellings were erected.

If a license to the occupants of either dwelling had been given by the former owners, such would have been revoked by the conveyance of the title to others and the continued use by the occupants of either dwelling would thereafter have been adverse to the owner of the fee of the other lands. Compare East Jersey Iron Co. v. Wright, 32 N.J.Eq. 248, 252 (Ch.1880); Page v. Gaskill, 84 N.J.L. 615, 617, 87 A.460 (E. & A.1913). The evidence in the instant case points clearly not to permissive use, but to acquiescence in the claim of right made by plaintiff and his predecessors in title. On this

phase of the case we hold that the plaintiff's prescriptive right in the alleyway was sufficiently proved. Naturally, as was admitted by plaintiff, defendants have a corresponding right in plaintiff's portion of the area."

Other cases which follow the majority rule are Andrzejczyk v. Advo System, Inc., 146 Conn. 428, 151 A.(2d) 881, and Shanks v. Floom, Ohio, 162 Ohio St. 479, 124 N.E.(2d) 416. See also Johnson v. Whelan, 1935, 171 Okl. 243, 42 P.(2d) 882, 98 A.L.R. 1096, and the annotation immediately following entitled "Rights arising from recipocal use by adjoining owners of strip along boundary for purpose of passageway or other purpose for benefit of both lots."

While admittedly there are cases holding directly to the contrary, we think the majority rule announced in both Corpus Juris Secundum and Am.Jur. is the better rule. Especially so in view of the former holding of this court in the case of Jones v. Whitaker, 12 Tenn.App. 551.

▮▮ Adopting the majority rule, it affirmatively appears that at the time the Levy heirs sold the property known as 1264 Peabody to Sanders in 1942 they had acquired title to an easement for the benefit of the Levy lot by prescription by 20 years joint or common use of the concrete driveway. This incorporeal appurtenance to the Levy lot passed with the deed conveying full fee simple title to the Levy lot to Sanders. Thus the complainant, Dorothy Jones, as a successor in title to Sanders became the legal owner of a right to use the concrete driveway as an appurtenance to her lot and the Chancellor quite properly ordered the defendants to remove the obstruction of such use. Hence assignments of error I, II and III are respectfully overruled.

■ Assignment of error No. IV insists that the complainant, Mrs. Dorothy Jones, should not have been permitted to testify that the real estate agent told her that it was a party driveway and that he thought the line went right down the middle of the driveway. Assignment of error No. V complains of the action in permitting the real estate agent, Mr. Wells, to testify that he told Mrs. Jones at the time of the purchase that he understood it to be a common or joint driveway. In our opinion it was competent for the complainant to testify as to what she thought she was buying not for the purpose of proving what she did buy but for the purpose of proving her intention. Therefore, assignments of error IV and V must be overruled.

The decree of the lower court will be affirmed at the cost of the appellants and the cause remanded for the enforcement of the decree.

Avery, P. J. (W.S.), and Bejach, J., concur.