# NICELY v. NICELY et al.—232 S. W. (2d) 421

Eastern Section.   July 12, 1949.

Petition for Certiorari denied by Supreme Court Dec. 10, 1949.

C. K. Ellis, of Rutledge, Erma G. Greenwood and R. R. Kramer, of Knoxville, for appellants.

Thurman Ailor, of Knoxville, for appellee.

HOWARD, J.   This suit was filed to settle a dispute over whether complainant and those claiming under him have an open-way or just a gate-way over the land owned by defendants.

On August 1, 1903, S. H. Nicely and wife conveyed to the defendant, L. C. Nicely, a tract of land located in Grainger County, the deed reserving the following right-of-way:   "This conveyance is made with the understanding and agreement that the said S. H. Nicely party of the first part, is to have a right-of-way sufficient for a wagon road through the west end of said premises, said road is to be located through said premises to the least possible damage to said premises and to the best advantage to the said party of the first part.   Said road is to be kept enclosed with gates, kept up by said party of the first part.   *   *   *''

On March 11, 1922 the aforesaid grantors conveyed a second tract of land adjacent to the first tract to L. C. Nicely, the deed containing the following reservation: "It is further agreed in the above consideration that the party of the first part is to have a 14 foot as a right-of-way road running from the lands of S. H. Nicely to the

public road at the west end of L. C. Nicely's garden. * * *,"

Both of the aforementioned right-of-ways were over the same servient estate and were for the benefit of the same dominant estate; and only one road-way has been maintained by the parties under the two deeds. Until his death in 1936, S. H. Nicely, who originally reserved the right-of-way, maintained the gates on the road-way over the defendants' land.

Complainant, Lillard Nicely, is the son of S. H. Nicely, and after his father's death, acquired all of the lands of which his father died, seized and possessed, either by inheritance or by purchase.

A portion of the land owned by S. H. Nicely at the time of the reservation of the right-of-way in question was later purchased by Cloyd Edmondson and wife, who became parties to the suit by intervening petition, and the land owned by Lillard Nicely at the time of the filing of the original bill, was subsequently purchased by Conley Frye.

Prior to 1936, one gate was maintained at the line between the lands of Lillard Nicely and L. C. Nicely, and another gate was maintained at the public highway. These gates prevented L. C. Nicely's stock from getting out and were opened and closed by those using the road-way.

The right-of-way was approximately one mile in length, and was used by five or six families to reach the public highway.

After the death of S. H. Nicely, the original complainant, Lillard Nicely, desired to have an open road across defendants' land, and there was a conversation between him and L. C. Nicely with reference to removing the gates. Regarding this conversation, Lillard Nicely testified as follows:

"Q. Now after you acquired the land did you enter into an agreement with the defendant L. C. Nicely? A. Some time after my father died, I don't remember whether it was weeks or months, I met my uncle and I said, 'I would like sometime to open this road,' and I will try to quote him as he answered me: 'Thats all right with me. I think I had rather have an open road than a gate road there.'

"Q. Go ahead. A. And the next time I mentioned it to him he was sitting on his front porch and I said 'Uncle Landon, I would like to open the road,' and he said, 'I have changed my mind about that, but I told you I would open the road and I will stick to my word.'

"Q. As a result of that agreement what did you do? A. Bought the wire, or sent the money to buy the wire, and they bought the wire and some of the boys fenced the road.

"Q. Now, by 'fencing the road' what do you mean? A. Put a fence on each side of the road.

"Q. That is through the farm of L. C. Nicely? A. Yes, sir."

Other witnesses testified they were present when fences along the road-way were being constructed, and that the son of L. C. Nicely went over the ground and pointed out where his father wanted the fence located; that after the fence had been built on the west side of the roadway, L. C. Nicely required them to build a fence on the east side as well.

Oren Acuff testified that L. C. Nicely agreed for the roadway in question to be built and opened up as a public road, and that it was graded and improved as much as the ordinary public road in the ridge section of Grainger County. After the road was fenced, it was graded by the WPA with the road machinery of Grainger

County under the "farm-to-market" roads program, at an expense of $800 and remained open for a period of nearly five years when the gates were replaced by the defendants. The defendant L. C. Nicely testified that he knew that those interested in removing the gates and opening the roadway were building the fences at their expense. Regarding the grading of the roadway, this defendant testified as follows:

"Q. Who informed you before the grading was done that it was going to be done? A. Well, as I remember, it was Burl Nicely.

"Q. And what was his official position? A. Well, as I understood it, he had a position from the state. I don't know what his duties was.

"Q. You knew that he was a state official and that he was grading the road at public expense? A. I knew that he was a state official and that he was grading the road, and I suppose it was public money. I don't know."

■ Under the facts and circumstances, we think there was a dedication of the road. In our state no formality is required to complete the dedication of land to a highway. The vital principle is the intention to dedicate, and this may be evidenced by any act of the owner, such as the throwing open of his land to public travel, or by acquiescence of the use of land for a highway. Burkitt v. Battle, Tenn. Chan. App., 59 S. W. 429, 437; Hill v. Hoffman, Tenn. Chan. App., 58 S. W. 929; Hagar v. Wilson, Tenn. Chan. App., 46 S. W. 1033; Hewitt v. City of Pulaski, Tenn. Chan. App., 36 S. W. 878, 883; Jackson v. State, 46 Tenn. 532; Worth v. Dawson, 33 Tenn. 59; Scott v. State, 33 Tenn. 629.

■ In the instant case the right-of-way already existed by virtue of the terms of the deed. The owner of the land agreed for the gates to be removed on the condition that

wire fences be placed on eacm side of the road, which was done at considerable expense. The road was graded with the use of public funds; and the road remained open for public use for nearly five years.

In Johnson City v. Wolfe, 103 Tenn. 277, 52 S. W. 991, 992, our Supreme Court, considering the question of dedication, said:

"On the subject of implied dedication, the law is well settled that, so far as the owner of the property is concerned, it is a question of intention,—not an intent which is kept concealed in the mind, but that which is manifest in the visible conduct and open acts of the owner. Elliott on Roads & S. p. 2.

"The true rule is clearly stated by Mr. Elliott on page 92 of the work just referred to, in the following terms: 'The public as well as individuals have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation.' "

It results that the Chancellor's decree will be affirmed at appellant's costs, and the cause will be remanded for enforcement of the Chancellor's decree.