Homer COLE et al., Petitioners,

v.

David W. DYCH et al., Respondents.

Supreme Court of Tennessee.

Feb. 17, 1976.

Frank B. Bird, Bird, Navratil, Tate & Bird, Maryville, William R. Holt, Jr., Holt, Gilreath & Brooks, Sevierville, for petitioners.

R. B. Hailey, Hailey, Water, Jarvis & Sykes, Gatlinburg, for City of Gatlinburg.

William P. Newkirk, Donald F. Paine, Egerton, McAfee, Armistead, Davis & McCord, Knoxville, for respondents.

## OPINION

HENRY, Justice.

This suit in chancery, brought and sustained as a class action, seeks to preserve an easement of ingress and egress by the issuance of a mandatory injunction commanding respondents to restore it to its former condition. Involved is a roadway to the Gatlinburg Cemetery. The Chancellor found the issues in favor of petitioners and granted the injunction. The Court of Appeals concurred in the finding of the Chancellor that there had been a dedication by implication for cemetery purposes but reversed as to the injunctive relief.

We reverse the judgment of the Court of Appeals and sustain that of the Chancellor, with modifications.

### I.

The Gatlinburg Cemetery, which has been in use for more than a century, is located in the center of downtown Gatlinburg. It is deeply rooted in the history and tradition of that fabulous and fascinating resort area. There the "forefathers of the hamlet sleep" and this suit is prompted to a

significant extent by sentiment. It represents an unfortunate collision between the expansion and development of an area whose growth has been phenomenal and the preservation of the last resting place of the mortal remains of the pioneers of the area and their progeny.

The respondents are the owners and operators of "The Village", a most unique and delightful shopping center located on the Parkway, Gatlinburg's main thoroughfare and generally in front of the cemetery. In process of adding additional units to The Village, respondents considered it necessary and desirable to excavate and level the rear of their property which is adjacent to the cemetery. In so doing they excavated to a considerable depth some seventy-five feet of the road leading to the cemetery, rendering it impassable and unusable. This suit ensued.

The origin of the roadway is sketchy. The record fairly establishes that the cemetery was in existence as early as 1865, long before anyone had any reason to believe that Gatlinburg would ever be more than a mere hamlet nestled in a picturesque valley in the Great Smoky Mountains. At this time and for many years thereafter, the property was used for general farming purposes.

The eastern boundary of respondent's property, and other property contiguous thereto, is Baskin Creek Road. At its intersection with the Parkway (U. S. Highway 441) there has stood for many years a Baptist Church. The cemetery is on a hill located southwest of the church. It is apparent from the testimony of some of the "old-timers" that for many years there was no well-defined route from the church to the cemetery. Funeral processions, led in the old days by wagons or other horse-drawn vehicles, simply made their way across the open field by the most convenient route. Later commercial expansion apparently forced the roadway up the hill, and nearer the cemetery, and gradually it became better defined.

It was not, however, until around 1952, after R. L. Maples inherited the property from his mother, Cora L. Maples, and after what is known in the record as the "Stone House" was built, that the roadway took its present form. For a number of years prior to that the road had been in existence over a well-defined route. The construction of the "Stone House" necessitated a change of a portion of roadway. The road, in its present form, was constructed or improved by Maples and was subsequently graveled by Sevier County. Later the City of Gatlinburg placed oil on it.

R. L. Maples, respondents' predecessor in title, was fifty-seven years old at the time of his testimony. His father, mother, grandfather and other members of his family are buried there. He testified to a recollection of the road for fifty years, and said:

> I considered the road was for the use of the people that were interested in using the cemetery for any purpose . . . I felt like the road had always been there and always would be. It did not dawn on me that there would ever be any question coming up about moving or closing the road or anything.

At all times the Baskin Creek Road entrance was blocked off by removable bars, or a gate, or a chain, or a spiked treadle. These obstructions served various purposes. In earlier times they served to contain grazing cattle. In more modern times Mr. Maples operated an amusement park, or a miniature train system, and still later he and/or respondents used a portion of the area as a parking lot to which admission was charged. It is further suggested in the record that these and other obstructions served to keep intruders and joyriders from entering in the night-time. Regardless of the reason it apparently was blocked off at all times and much of the time was locked.

On occasions when burials were conducted, the Church or its minister, or the janitor, or the funeral home, or some member of the family picked up the key as a matter of course. The proof shows conclusively that no one has ever been denied access to the roadway. There is a sharp dispute over whether those using cemetery for burials, decorations and other normal cemetery pur-

poses, had to get permission or used the road as a matter of right. We regard this as being largely semantic and, in the view we take of the matter, of no consequence. The indisputable fact remains that the general public used the roadway as a matter of custom and practice and without let or hindrance.

This roadway is approximately ten feet wide—just wide enough for a single line of vehicular traffic. There is no vehicular entrance to the cemetery proper and the turnaround is on the property of an adjoining property owner. See *infra*. Respondents knew of the existence of this road before they purchased their property in 1965.[1]

The Chancellor's decree recites his finding of fact as follows:

1. The public has an easement for cemetery purposes only . . .

2. The public's said right to use said road is declared to be for any and all reasonable cemetery purposes . .

3. The defendants and their successors in interest may use the easement for any purpose so long as said use does not interfere with the use of the roadway by the public for cemetery purposes . . .

4. (Relates to relief)

5. The Court finds that there was an implied dedication of the road for public use for cemetery purposes.

The record fully supports the Chancellor in these findings and we concur therein.

The Chancellor, among other things, ordered and decreed that the respondents restore the roadway to its former condition and that they maintain and repair it after restoration.

The Court of Appeals concurred generally in the Chancellor's findings of fact. It specifically affirmed "his finding of a dedica-

tion by implication for the public to use the roadway for cemetery purposes only." That court, however, held that the equitable remedy of mandatory injunction was not available, reversed the Chancellor and dismissed the lawsuit. It is our disagreement with this latter conclusion that prompted this Court to grant certiorari and that now prompts us to reverse the Court of Appeals.

## II.

We first address the issue of dedication. Distinguished counsel for the respective parties ably, earnestly and violently differ as to this issue. Notwithstanding the concurrence of the Court of Appeals with the conclusion of the Chancellor, we feel that this case is of sufficient importance to justify a full discussion of this issue, particularly in view of the sharp dispute among counsel.

As we narrow the issues, we point out that we are not dealing with a conventional public road and that the cases involving such roads are not necessarily controlling. A public road has generally been defined to be a way open to all people, without distinction, for passage and repassage at their pleasure. *Sumner County v. Interurban Transp. Co.*, 141 Tenn. 493, 213 S.W. 412 (1918).[2] This is not such a road.

Nor do we deal with a way of necessity or easement by implication. It is the policy of our law to restrict the doctrine of implied easements as they are not favored in the law. Such easements basically are founded on conveyances and are premised upon the presumption that they were within the contemplation of the parties, and must be supported by a unity of title. *Line v. Miller*, 43 Tenn.App. 349, 309 S.W.2d 376 (1957). As is more fully discussed hereinafter, it was the failure to recognize these principles that prompted the Court of Appeals to reach the ambiva-

---

1. The attorney's certificate of title on the interim title insurance under "other liens, objections, and defects" makes specific reference to this "road to the graveyard through subject property."

2. For an interesting and enlightening discussion of the various criteria which the Tennessee Courts have used in determining the status of a road, see Judge Miller's opinion in *Outlaw v. Louisville and Nashville Railroad Company*, 448 F.2d 1284 (6 Cir. 1971).

lent conclusion that petitioners had acquired a right-of-way by dedication but that respondents were not required to reopen and restore it.

■ There also lurks in this record the suggestion that petitioners and the general public have another access to the cemetery and, therefore, they have no right to the continued use of the one in controversy. Again, we do not deal with a way of necessity which terminates when the reason for the servitude no longer exists. *McGiffin v. City of Gatlinburg*, 195 Tenn. 396, 260 S.W.2d 152 (1953). Where an easement exists, its continuation is not dependent upon the necessity for its use. *Cottrell v. Daniel*, 30 Tenn.App. 339, 205 S.W.2d 973 (1947).

■ We are dealing with an easement acquired by dedication as found by the Chancellor and the Court of Appeals.[3]

A bench mark in the law dealing with the dedication of easements is *McKinney v. Duncan*, 121 Tenn. 265, 118 S.W. 683 (1908) wherein Justice John K. Shields, subsequently Chief Justice and United States Senator from Tennessee declared:

. . . Dedication is the appropriation or gift by the owner of land, or an easement therein, for the use of the public. It may be express, where the appropriation is formally declared, or by implication arising by operation of law from the conduct of the owner and the facts and circumstances of the case. To establish it by implication, there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct. In other words dedication is a question of intention, and the intent must be clearly and satisfactorily proven. 121 Tenn. at 271, 118 S.W. at 684.

Another case which has been cited down through the years is *Johnson City v. Wolfe*,

103 Tenn. 277, 52 S.W. 991 (1899), where Justice Beard quoted with approval from Elliott on R. & S. as follows:

The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. 103 Tenn. at 282, 52 S.W. at 992.

In *Woolard v. Clymer*, 35 S.W. 1086 (Tenn.Ch.App.1895) the Court held the law to be "well settled that, when a road runs across private property, and is used by the public as a common road, without interruption, for 50 years, the owner acquiescing in such use, the law will presume a dedication . . . for such purpose." 35 S.W. at 1088.

■ These early cases have continuing validity. No formal document, deed or act is required to complete the dedication. The controlling criterion is the intention to dedicate and, while this must be unequivocal, it may be gleaned from the surrounding facts and circumstances. Among these circumstances is long use by the public or a portion thereof. Indeed, from long use, without objection of the owner, it may be inferred or presumed that such use and enjoyment had a legal origin. *McCord v. Hays*, 202 Tenn. 46, 302 S.W.2d 331 (1957).

In *Doyle v. City of Chattanooga*, 128 Tenn. 433, 161 S.W. 997 (1913) the Court held:

A user by the general public . . . may operate as an acceptance on its part, binding the dedicator by way of consummating the dedication, and placing it beyond revocation on his part. 128 Tenn. at 440, 161 S.W. at 998.

In the narration of facts, *supra*, it is pointed out that R. L. Maples fixed and

---

**3.** A finding of an intention to dedicate is a finding of fact. *Guinn v. Eaves*, 117 Tenn. 524, 101 S.W. 1154 (1906). Thus there is a concurrent finding which is virtually conclusive upon this Court.

established the road in its present route. This action on his part was tantamount to a rededication and, upon the acceptance and use by those going to and from the cemetery, the dedication became unqualified and complete and could not be withdrawn. See *McDavid v. McGuire*, 526 S.W.2d 474 (Tenn. App.1973).

▮ The fact that all owners of the subservient estate maintained gates or other forms of obstructions to prevent unauthorized entry does not alter the character of this roadway. The maintenance of gates is not necessarily inconsistent with the existence of an easement. Generally speaking, the owner of land subject to a right-of-way may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way. *Ogle v. Trotter*, 495 S.W.2d 338 (Tenn.App.1973); *Luster v. Garner*, 128 Tenn. 160, 159 S.W. 604 (1913). In *Burkitt v. Battle*, 59 S.W. 429 (Tenn.Ch.App.1900), the Court recognizes the right to dedicate with a reservation of the privilege of maintaining gates.

▮ A substantial part of the respondents' case is premised upon the permissive use of this roadway. Again, we are not dealing with a prescriptive right. It is not necessary that the use be hostile or adverse to the claim of the owner. Where permissive use defeats a claim based on adverse possession, it tends to establish dedication.

▮ Finally, since we are not dealing with a prescriptive right, the time element is of secondary importance to the crucial element of intent. No particular period is controlling. Use for twenty years might be insufficient to establish dedication in one case and yet it might be established in another in one year. Dedication is not dependent upon the duration of use. Use for a long period of time is, however, a circumstance tending to show the fact of dedication. *Scott v. The State*, 33 Tenn. 629 (1854).

▮ An excellent statement of the law in this regard is found in *Johnson City v. Wolfe, supra* :

No specific length of time is essential to constitute a valid dedication, all that is required is the assent of the owner of the soil to the public use and the actual enjoyment by the public *for such a length of time that the public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment.* (Emphasis added).

It is interesting to note that substantially the language italicized in this quotation appears in 23 *Am.Jur.2d Dedication*, Sec. 30, with cases from Pennsylvania, South Dakota and Texas (but not Tennessee) cited as authority. We think this Tennessee case is unquestionably the correct rule of law.

In *Nicely v. Nicely*, 33 Tenn.App. 589, 232 S.W.2d 421 (1949), the Court declared a dedication at the end of five years use, along with other circumstances, including road grading with public funds.

Finally, in *Payton v. Richardson*, 49 Tenn. App. 514, 356 S.W.2d 289 (1961), the Court, citing *Johnson City v. Wolfe, supra*, held:

The manner of its use is more material than the length of time the use has continued. 356 S.W.2d at 291.

▮ We are convinced that under the totality of the proof, and when consideration is given to all the facts and circumstances, there was a clear and unequivocal dedication by respondents' predecessors in title to the public use of this roadway for cemetery purposes, with the right implicitly reserved to maintain gates or other barriers which cause a minimum of inconvenience to the users, and that there has been a public acceptance for the limited purposes of the grant. That dedication may not be withdrawn or the use infringed by unilateral action on the part of the owner of the fee.

We, therefore, concur in the conclusion reached by the Chancellor and the Court of Appeals that there was a dedication.

### III.

We part company with the Court of Appeals when we reach the point of consider-

ing the remedy for the redress of a wrong done to this recognized right.

As a prelude to its discussion of the remedy of a mandatory injunction, the Court of Appeals made an additional finding as follows:

As noted, the defendants are bounded on the west by Hattie Ogle McGiffin. The McGiffin property extends from U.S. 441 as its northern boundary to the cemetery as its southern boundary. The gate in the cemetery fence is on the McGiffin line. For approximately the past 30 years the owners of the McGiffin property allowed people to go to the cemetery by a route extending southwardly from Highway 441 up the hill to the cemetery and along the cemetery fence to the gate entering the cemetery. There was *also a turnaround on the McGiffin property* so vehicles could turn around and leave by the route by which they approached the cemetery. There developed over the years a well defined roadway and turnaround as result of the use made of this route to the cemetery. (Emphasis supplied)

There is also a pedestrian entrance to the cemetery from the south where concrete steps have been constructed.

The proof fairly establishes the approach to the cemetery could be over McGiffin from U.S. 441, turn around and leave over the same route, or continue on across the defendants' land to Baskins Creek Road. Or, the approach could be from Baskins Creek Road across the defendants' land, turn around on McGiffin and return, or continue across McGiffin to U.S. 441. There is evidence the public used any one of the methods of travel they chose. Regardless of how the public might have approached and left the cemetery, the record establishes there *were two routes of ingress and egress,* established at different times over different lands and independent of each other; one over the defendants' land, and one over McGiffin. (Emphasis supplied).

Basically we concur in these findings. After this recitation the Court proceeds to detail the course of certain litigation over the McGiffin right-of-way, which culminated in "an agreement whereby she would restore the road." As to this the Court said:

A final consent judgment was entered . . . wherein a right of way for ingress and egress to and from the cemetery over the land of McGiffin was decreed. This right of way is over the newly constructed black top road, 10 feet wide, from U.S. 441 southwardly to the cemetery line and eastwardly along the cemetery line to the boundary between the McGiffin property and Dych and Gerding. This road is the one built by Mrs. McGiffin under her agreement with the plaintiffs who sued her. The right of way was limited to 10 feet in width, and any turning outside of 10 foot width is to be by permission only, which permission may be withdrawn.

The decree is particular to recite that: Said roadway is expressly limited to said ten feet and *no vehicular turning outside of said ten feet* may be made except with the permission of the owners of the fee, and any such *permitted usage* outside of said ten feet shall be considered *permissive only,* and *not a matter of right* and the owners of the fee may *withdraw any such granted permission at will.* (Emphasis supplied)

 The Chancellor ruled that all portions of the record in the McGiffin suit were inadmissible and refused to permit any testimony about it or the McGiffin right-of-way. In so doing, we think he was partially in error. The final decree should have been admitted as bearing upon the relief. The Court of Appeals so held and we agree.

The Court of Appeals held that "(t)he final consent order in *Huskey v. McGiffin* established in the public a definitive route of ingress and egress to and from the cemetery."

We disagree with this conclusion. It confirmed to the public a definite *right of ingress* over a ten-foot right-of-way, with a permissive and precarious right to a turn-

around. If Mrs. McGiffin or her heirs elect to exercise the right to deny the use of a turn-around, then all the public has left is the right to a one-way trip to the cemetery. Funeral processions perforce of necessity would then back their cars away from the cemetery, down the hill and into U.S. Highway 441, or the Parkway, the main street of Gatlinburg.

The Court of Appeals states, that "(n)either the public nor the plaintiffs in behalf of the public has a right to demand multiple routes of access to the cemetery." Assuming *arguendo* the correctness of this statement, it assumes a complete access which must encompass some means either of turning around or continuing.

Again, we do not deal with a way of necessity and the existence of other routes is material only to the relief. We would not decree the admittedly harsh remedy of mandatory injunction if the McGiffin right-of-way included a permanent turnaround,[4] or if there were another reasonable and usable approach to the cemetery. Instead we would leave petitioners to their remedy at law for damages.

This Court is acutely aware of the rules governing the issuance of mandatory injunctions. Chancellor Gibson points out that they are never issued except when the injury is irreparable, but he also points out that equity will not suffer a wrong without a remedy.

Perhaps the leading recent Tennessee case dealing with mandatory injunctions is *King v. Elrod*, 196 Tenn. 378, 268 S.W.2d 103 (1953), wherein Justice Burnett, later Chief Justice of this Court, spoke for the Court, declining to issue a mandatory injunction to compel the restoration of a cemetery which had been completely obliterated or as Justice Burnett phrased it, "had been completely wiped from the face of the earth."

■ In substance the Court correctly held that mandatory injunctions are not favored by the courts; that they will not be granted except in extreme cases, and when the injury complained of cannot be compensated in damages; that their issuance rests in the exercise of sound judicial discretion; that the Court must act in a careful and constructive manner and award them in clear cases where such relief is the only real remedy to prevent irreparable injury. The text of 47 *Am.Jur.2d, Injunctions,* Sec. 20, tracks *King v. Elrod, supra,* and cites it in five footnotes.

However, in spite of its harshness it is still a viable extraordinary process and our courts have not hesitated to use it. For example, in *Jones v. Ross,* 54 Tenn.App. 136, 388 S.W.2d 640 (1963), the Court of Appeals, speaking through Judge Carney, the Presiding Judge, upheld the action of a chancellor in ordering the removal of a brick fence. And in *Collins v. Thomas,* 495 S.W.2d 201 (Tenn.App.1973), the Court, speaking through Matherne, J. (the author of the opinion in the instant case), ordered the erection of a fence.

■ We hold that a mandatory injunction is the only available and viable remedy in this action. To say that petitioners have a right-of-way, but respondents could dig it up with impunity, and cannot be required to restore it, gives petitioners the fruits of a hollow victory and is a triumph of shadow over substance.

Let the mandatory injunction issue.

### IV.

This Court expressly approves all findings made in the judgment of the Chancellor, and of the mandate thereof, with the exception of so much of paragraph b. as places the duty of maintenance upon respondents and so much of paragraph c. as gives the respondents the right to relocate the right-of-way.

■ We think it unjust to place the burden of maintenance upon respondents.

---

4. The cemetery itself contains no space in the vicinity of either right-of-way for a turn-around.

This burden is cast upon the City of Gatlinburg.[5]

Giving respondents the right to relocate this roadway is potentially productive of further litigation. On remand—by agreement of the parties if possible, by order of the Chancellor if necessary—the precise route of the roadway will be fixed and determined by survey; a plat will be made accompanied by a metes and bounds description and lodged in the office of the Clerk & Master at Sevierville, with a certified copy placed on record in ROSCT. Any roadway so surveyed shall connect with the Hattie Ogle McGiffin right-of-way. Petitioners will pay the costs incident to the survey and the recording of the plat.

As an alternative, the respondents may procure, and deed to Trustees for the use and benefit of the cemetery, a substitute right-of-way, providing ingress and egress. This alternative procedure may only be followed with the prior approval of the Chancellor and under such criteria, consistent with this opinion, as he may establish. Any such substitute right-of-way will be surveyed, platted, filed and recorded as hereinabove provided.

The decree of the Chancellor is modified and affirmed; that of the Court of Appeals reversed.

FONES, C. J., and COOPER, HARBISON and BROCK, JJ., concur.

## OPINION ON PETITION TO REHEAR

HENRY, Justice.

Counsel for respondents have filed a dignified, courteous, forceful and persuasive petition to rehear.

It does not however raise any question that has not heretofore been fully considered by the Court.

It is in the nature of the appellate judicial process that the issues are generally arguable from the vantage point of either side to any given case or controversy; that the facts are susceptible of differing interpretations; and that it is a rare case indeed wherein the Court can say to a mathematical certainty that either party is entirely correct. Under the rules governing appellate review, such certainty is not required. Indeed, an appeal where either the law or the facts are not susceptible of a *bona fide* dispute tends to be frivolous in nature, and most assuredly this appeal presented a *bona fide* and justiciable controversy. This Court has reached a decision upon the matter after thorough and painstaking attention and consideration. It has reconsidered in the light of the petition to rehear, and upon that reconsideration, feels that it must adhere to the original opinion.

The petition to rehear is respectfully overruled.

All concur.

---

5. The City of Gatlinburg intervened in this suit and counsel for the city, at the bar of this Court, tendered the city's offer to maintain.