IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

July 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

YVONNE WIMPEE CANNON,               ) C/A NO. 03A01-9901-CV-00029
                                    )
    Plaintiff/Counter-Defendant-)
    Appellee,                       )
                                    )
v.                                  )
                                    )
CITY OF CHATTANOOGA,                )
                                    )
    Defendant/Counter-Plaintiff-)
    Appellant.                      )
                                    )
                                    )
                                    )
CHARLOTTE BLALOCK, Individually     )
and as guardian and next friend     )
of AMBER STONECIPHER,               )
                                    )
    Plaintiff-Appellee,         ) APPEAL AS OF RIGHT FROM THE
                                    ) HAMILTON COUNTY CIRCUIT COURT
                                    )
v.                                  )
                                    )
JAMES WIMPEE and YVONNE WIMPEE      )
CANNON,                             )
                                    )
    Defendants,                 )
                                    )
RICHARD A. PHILLIPS,                )
                                    )
    Defendant,                  )
                                    )
and                                 )
                                    )
CITY OF CHATTANOOGA,                )
                                    ) HONORABLE L. MARIE WILLIAMS,
    Defendant-Appellant.        ) JUDGE

For Appellant                    For Appellee Yvonne
                                   Wimpee Cannon
KENNETH O. FRITZ
MICHAEL A. McMAHAN               CONRAD FINNELL
Special Counsel                  Conrad Finnell, P.C. &
Chattanooga, Tennessee             Associates
                                 Cleveland, Tennessee

                                 ALVIN Y. BELL
                                 Bell, Turner & Hobbs
                                 Chattanooga, Tennessee

                                 For Appellee Charlotte Blalock

                                 JEFFREY W. RUFOLO
                                 Summers & Wyatt, P.C.
                                 Chattanooga, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                              Susano, J.

1

This case arises out of an automobile accident involving an emergency rescue vehicle ("the rescue truck") and three other vehicles. The rescue truck was driven by Richard A. Phillips ("Phillips"), an employee of the defendant/counter-plaintiff, the City of Chattanooga ("the City"). The other vehicles involved in the collision were a Ford Ranger truck driven by James Wimpee ("Wimpee") and owned by Wimpee's mother, plaintiff/counter-defendant Yvonne Wimpee Cannon ("Cannon"); a Mercedes driven by plaintiff Charlotte Blalock ("Blalock"); and a Ford Explorer driven by an unidentified individual who is not a party to this lawsuit.

Following a bench trial, the court found that Phillips, as the driver of the rescue truck, was 100% at fault for the accident; it also held that Phillips' negligence was imputed to the City. Accordingly, the trial court found that the City was liable to Cannon for the damages to her vehicle in the amount of $3,500. The trial court held the City liable for damages of $18,500 on Blalock's individual claim for injuries sustained in the accident, and $6,500 on Blalock's claim on behalf of her granddaughter, Amber Stonecipher ("Stonecipher"), who was also injured in the accident. The trial court also dismissed a counterclaim filed by the City against Cannon. The City appeals, contending that the trial court erred in assigning 100% of the fault to it, in failing to apportion any percentage of fault to Wimpee, and in dismissing its counterclaim against Cannon. We affirm.

## I. *Facts and Procedural History*

On February 14, 1996, Phillips, an EMT firefighter with the Chattanooga Fire Department, was dispatched with his rescue team to the scene of an automobile accident at the intersection of Interstates 24 and 75. Driving a six-wheel, five-passenger rescue truck, Phillips entered Interstate 24 East, enroute to the accident. At all points relevant to the instant case, Interstate 24 East consisted of three lanes of travel. Prior to entering the Interstate, Phillips had engaged the truck's emergency lights and siren. After moving into the left lane, Phillips observed that all three lanes of traffic were congested and that traffic was slowing down ahead of him. Phillips testified that he then decided, in an effort to maneuver around the traffic, to move left into the "breakdown lane" -- a six to seven foot wide area between the left lane of traffic and the concrete barrier that separated the eastbound and westbound lanes of Interstate 24.

In the meantime, Wimpee was driving Cannon's pickup truck in the left lane of I-24 East, a short distance ahead of Phillips. Wimpee testified that as traffic began slowing, he heard a siren from behind. Wimpee testified that he looked in his rear-view mirror for the source of the siren, and that as he looked back in front of him, traffic had come to a stop. Unsure whether he could stop in time to avoid colliding with the vehicle in front of him, and hoping to avoid any potential collision from behind, Wimpee applied his brakes and pulled over to the left, *i.e.*, into the breakdown area. He was able to make this maneuver without striking the vehicle in front of him.

3

Phillips testified that, upon entering the breakdown lane, he slowed to about 35 miles per hour and was able to pass one or two vehicles that were traveling in the left lane. He stated that he then saw Wimpee's truck pull out in front of him into the breakdown lane. Phillips initially steered the rescue truck to the right, colliding with Blalock's Mercedes. He applied his brakes but impacted the rear of Wimpee's truck, as well as that of the Ford Explorer, approximately two seconds later. Phillips estimated that his truck was going 25 to 30 miles per hour at the time of the collision.

Following the accident, Cannon filed suit against the City to recover for damages to, and the loss of use of, her truck. The City filed a counterclaim against Cannon, alleging that Cannon was liable for Wimpee's negligence, which, according to the City, had been the proximate cause of the accident.[1] Blalock filed suit as well -- both individually and as guardian and next friend of Stonecipher -- against Cannon, Wimpee, Phillips and the City, seeking to recover for injuries sustained by her and by her granddaughter.[2] Blalock's claim against Cannon and Wimpee was disposed of prior to trial.[3]

After consolidation by order of the trial court, the two cases proceeded to trial, at which time the parties

---

[1] The City apparently did not allege at trial, nor does it allege on appeal, any negligence on the part of Blalock.

[2] Blalock evidently amended her complaint to add a claim for property damage; however, the trial court ultimately found that claim to be barred under the applicable statute of limitations, T.C.A. § 29-20-305. Blalock does not appeal this or any other aspect of the trial court's judgment.

[3] Stonecipher's claim against Wimpee and Cannon was subsequently settled by the parties.

4

stipulated that Phillips was an employee and agent of the City and that he had been acting in the course and scope of his employment at the time of the accident.

At some point during the proceedings, the trial court dismissed the City's counterclaim against Cannon, finding no basis for imputing any liability to her.

At the conclusion of the trial, the court found, among other things, that Phillips had violated T.C.A. § 55-8-108 by failing to drive with due regard for the safety of other persons; that Phillips "could have anticipated sudden stops and moves of those traveling in traffic"; that Phillips' "inability to keep his vehicle under sufficient control in light of these circumstances was negligence"; and that Phillips' actions "which are imputed to the City of Chattanooga [were] the sole cause of the accident...." Accordingly, the trial court assigned 100% of the fault to the City. It awarded damages of $3,500 to Cannon on her property damage claim. Finding that Blalock and Stonecipher had "each suffered permanent injury in the accident and [had] incurred reasonable and necessary medical bills and expenses," the trial court entered judgment in favor of Blalock in the amount of $18,500 as to her individual claim and $6,500 as to her claim on behalf of her granddaughter.

II. *Applicable Law*

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us

5

with a presumption that the trial court's factual findings are correct. Rule 13(d), T.R.A.P.; **Wright v. City of Knoxville**, 898 S.W.2d 177, 181 (Tenn. 1995). We must honor this presumption unless we find that the evidence preponderates against those findings. Rule 13(d), T.R.A.P.; **Wright**, 898 S.W.2d at 181**; Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is also subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn.App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn.App. 1991).

The Supreme Court has also noted that "[a] trial court acting as trier of fact 'has considerable latitude in allocating percentages of fault to negligent parties....'" **Coln v. City of Savannah**, 966 S.W.2d 34, 44 (Tenn. 1998)(quoting **Wright**, 898 S.W.2d at 181.) An appellate court may alter the trial court's allocation of fault where the lower court's action is "clearly erroneous." **Coln**, 966 S.W.2d at 44; **Wright**, 898 S.W.2d at 181.

The appropriate percentage of fault to be apportioned to each party "is ultimately dependent upon all the circumstances

6

of the case." *Eaton v. McLain*, 891 S.W.2d 587, 593 (Tenn. 1994).
Factors to be considered by the trier of fact include, but are
not limited to, the following:

> (1) the relative closeness of the causal
> relationship between the conduct of the
> defendant and the injury to the plaintiff;
> (2) the reasonableness of the party's conduct
> in confronting a risk, such as whether the
> party knew of the risk, or should have known
> of it; (3) the extent to which the defendant
> failed to reasonably utilize an existing
> opportunity to avoid the injury to the
> plaintiff; (4) the existence of a sudden
> emergency requiring a hasty decision; (5) the
> significance of what the party was attempting
> to accomplish by the conduct, such as to save
> another's life; and (6) the party's
> particular capacities, such as age, maturity,
> training, education, and so forth.

*Coln*, 966 S.W.2d at 44; *Eaton*, 891 S.W.2d at 592.


The relevant statutory provisions are found at T.C.A.
§§ 55-8-108 and -132. Section 55-8-108 confers upon authorized
emergency vehicles -- such as the rescue truck in this case[4] --
certain exemptions from normal "rules of the road," when such
vehicles are responding to an emergency call and operating their
emergency audio and visual equipment. *See* T.C.A. § 55-8-108(a)
through (c). The statute also provides, however, that

> [t]he foregoing provisions shall not relieve
> the driver of an authorized emergency vehicle
> from the duty to drive with due regard for
> the safety of all persons, nor shall such
> provisions protect the driver from the
> consequences of the driver's own reckless
> disregard for the safety of others.

---

[4]The parties do not dispute that the rescue truck is an "authorized
emergency vehicle" within the meaning of the statute.

7

T.C.A. § 55-8-108(d).  Section § 55-8-132 provides, in pertinent part, as follows:

> (a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals...:
>
> (1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

T.C.A. § 55-8-132(a)(1).


III.  *Analysis*


A.  *The Trial Court's Apportionment of Fault*


The City contends that the trial court erred in assigning 100% of the fault to it and none to Wimpee.  It insists that some percentage of fault must be assigned to Wimpee, in view of his failure to yield the right-of-way to the emergency vehicle, as required by T.C.A. § 55-8-132(a)(1).


Upon review of the record, we are of the opinion that the evidence does not preponderate against the trial court's determination that the rescue truck was traveling at a speed that was unreasonable under the circumstances and traffic conditions. The evidence likewise does not preponderate against the trial court's finding that Phillips failed to exercise due regard for

8

the safety of other drivers on the road, as required by T.C.A. § 55-8-108. Despite the City's arguments to the contrary, it is clear that Phillips' negligence was the proximate cause of the accident. Although the width of the rescue truck was not measured, it is obvious from the photographs introduced as exhibits at trial that the truck was significantly wider than the six to seven foot breakdown lane through which Phillips attempted to negotiate. In his testimony at trial, Phillips acknowledged that the rescue truck was wider than the breakdown lane; that he had not previously attempted to drive this type of truck through the breakdown lane; and that immediately prior to the accident, he had a view ahead of about 2,000 feet, and could see the traffic slowing down and then stopping. Furthermore, Phillips admitted that he had had the option of braking and remaining in the flow of traffic, but had decided to attempt to maneuver his truck between the left-hand lane and the concrete barrier.

Given the foregoing, we cannot say that the evidence preponderates against the findings of the trial court. Rule 13(d), T.R.A.P.; *Wright*, 898 S.W.2d at 181. By the same token, we cannot say that, under the circumstances of this case, the trial court's allocation of 100% of the liability to the City, as Phillips' employer, was clearly erroneous. *Coln*, 966 S.W.2d at 44; *Wright*, 898 S.W.2d at 181; *Eaton*, 891 S.W.2d at 593.

B. *Dismissal of the City's Counterclaim*

The City also contends that the trial court erred in dismissing its counterclaim against Cannon. In this context, the City argues that Cannon was the owner of the truck driven by

9

Wimpee and that she had given her son express permission to use the vehicle "for the family's convenience." In contending that Cannon should be held liable for Wimpee's actions, the City relies upon the family purpose doctrine, which was recently described by the Supreme Court as follows:

> ...the head of a household who maintains a motor vehicle for the general use and convenience of the family is liable for the negligence of any member of the family driving the vehicle, provided the driver received express or implied consent.
>
> The family purpose doctrine is applicable when two requirements have been satisfied. First, the *head of the household* must maintain an automobile for the purpose of providing pleasure or comfort for his or her family. Second, the family purpose driver must have been using the motor vehicle at the time of the injury "in furtherance of that purpose with the permission, either expressed or implied, of the owner."

*Camper v. Minor*, 915 S.W.2d 437, 447 (Tenn. 1996)(citations omitted)(emphasis added).

In the instant case, the proof established that although Cannon was the owner of the vehicle driven by her son at the time of the accident, she was not the head of his household. Therefore, the family purpose doctrine is inapplicable to the facts before us, and we find the City's argument on this point to be without merit. In any event, we have already held that the trial court properly assigned all of the fault for the accident to the City; thus, there is no liability attributable to Wimpee that could be imputed to Cannon. We hold that the trial court did not err in denying the City's counterclaim against Cannon.

10

IV. *Damages for Frivolous Appeal*

Appellee Cannon's request for damages for a frivolous appeal under T.C.A. § 27-1-122 is found to be without merit and is hereby denied. The issues raised by the appellant were fairly debatable. *See **Cole v. Dych***, 535 S.W.2d 315, 323 (Tenn. 1976).

V. *Conclusion*

The judgment of the trial court is in all respects affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for enforcement of the judgment and the collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.