IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## DAVID ALTON REECE, ET AL. v. ROBY BROWN

**Appeal from the Chancery Court for Marion County**
**No. 6077      Jeffrey F. Stewart, Chancellor**

_____

**No. M1997-00217-COA-R3-CV - Decided May 23, 2000**

_____

This appeal involves a dispute over whether a passageway through private land has been dedicated to public use. The owners of a tract adjoining the tract through which the passageway runs filed suit in the Chancery Court for Marion County seeking a declaration that the passageway had been dedicated for public use. After a bench trial, the trial court dismissed the complaint, and the property owners seeking to prove dedication appeal. We affirm the trial court because the evidence does not preponderate against it's finding that there was no manifest intention to give the passageway to public use.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

Koch, J., delivered the opinion of the court, in which Todd, P.J., M.S., and Cantrell, J., joined.

Howard G. Swafford, Jasper, Tennessee, for the appellants, David Alton Reece and Connie Irene Reece.

J. Harvey Cameron, Jasper, Tennessee, for the appellee, Roby Brown.

### OPINION

Kerr-McGee Chemical Corporation ("Kerr-McGee") owned a large tract of land at the junction of Sequatchie Road[1] and Curtis Trace Road in Marion County, Tennessee. In the mid-1980's, Kerr-McGee began selling the land piece by piece and, by 1992, the parties to this dispute owned their respective properties. The properties relevant to this dispute are those currently owned by the plaintiffs, David Alton Reece and Connie Irene Reece; the owners of the property through which the disputed passageway runs, John Morgan Coppinger and Mary Jean Coppinger; and the defendant, Roby Brown. We have attempted to combine the information in the record to create a

_____

[1]Some of the witnesses refer to this road as Sequatchie Mountain Road. However, the parties, deeds, and one of the surveys refer to it as Sequatchie Road.

map providing a rough overview of the properties as they stood at the date of trial. Obviously, the map is not fully accurate, or to scale.



The first relevant chain of title is from Kerr-McGee to the Reeces. On January 6, 1987, Kerr-McGee conveyed to Marshall B. Newsom and Annie Sue Newsom a 50-acre tract east of, and directly adjacent to Curtis Trace Road. Two other tracts, both adjacent to Curtis Trace Road, lay between the Newsom tract and Sequatchie Road. The deed description of the Newsom property defines its

eastern border by reference to a logging road running south from Sequatchie Road. Kerr-McGee used the logging road to traverse its as yet unsold property to the east of the Newsom tract.

On November 4, 1989, the Newsoms conveyed to Travis E. Harrison and Diana M. Harrison 19.92 acres of the Newsom tract on the eastern side, retaining the western 30 acres for themselves. The Newsoms also granted the Harrisons an easement across the retained land to Curtis Trace Road.[2] On July 21, 1990, the Harrisons conveyed their 19.92 acres to the Reeces, together with the right of way across the Newsoms' property to Curtis Trace Road. Both conveyances defined the eastern border of the 19.92 acre property by reference to the logging road.

The second pertinent chain of title is from Kerr-McGee to the Coppingers. On April 30, 1987, some four months after the Newsoms purchased their land, Kerr-McGee conveyed to the Coppingers a 99.78 acre tract to the south of, and adjacent to Sequatchie Road. The deed excluded from the conveyance "an existing 50 foot wide unrestricted road right of way leading from the Sequatchie paved road through this property for excess [sic] to adjoining property, to the South . . . ." This right of way ( the "Coppinger right of way") follows the same course as the logging road that Kerr-McGee had been using to cross its property. However, unlike the logging road, the Coppinger right of way stops at the southern border of the Coppinger property. The southwestern corner of the Coppinger right of way touches the northeastern corner of the Reece property. However, the logging road, which is significantly narrower than the 50 feet wide Coppinger right of way, lies thirty 30 feet to the east of the Reece property.

The third relevant chain of title is from Kerr-McGee to Mr. Brown. On an unspecified date after selling to the Newsoms and the Coppingers, Kerr-McGee sold the tract of land to which it had retained access via its right of way over the Coppingers' land. The Coppinger tract occupies the northern border of this property, and the Reece property is on a portion of the eastern border. The record is unclear as to the original purchasers. Nevertheless, it is clear that, on July 10, 1992, Mr. Brown purchased the tract from David E. Kelley, William R. Ellis, III, and Murray H. Gibson, subject to timber rights previously conveyed to Mead Corporation ("Mead"). On the same day, Messrs. Kelley, Ellis, and Gibson executed another deed conveying to Mr. Brown an easement for the "nonexclusive right of ingress and egress" through the Coppinger property to Sequatchie Road. This easement follows the same path as that of the Coppinger right of way retained by Kerr-McGee in the April 30, 1987 deed.[3]

---

[2]This right of way is 25 feet wide.

[3]As the trial court pointed out, the record does not tell us who owns fee simple in the property over which Mr. Brown has an easement.

The following is a magnified map of the corner at which the Reece, Coppinger, and Brown tracts converge. Again, it is intended only as a visual aid, and is not to scale.



When Mr. Brown purchased his property and easement, he put locks on cattle gates previously erected by the Coppingers at either end of the easement over the Coppinger property.[4] In 1995, Mead began its logging operations on Mr. Brown's land. To facilitate transporting timber off the property, Mead improved the logging road running through the Coppinger right of way. According to Mr. Brown, this was when the Reeces first displayed an interest in the logging road. He testified that Mr. Reece, without permission, took down the cattle gate leading from Mr. Brown's property to the Coppinger right of way, and regularly crossed 30 feet through Mr. Brown's property to reach the logging road. Mr. Brown responded by using his bulldozer to block access to his property with a pile of dirt.

On January 21, 1997, the Reeces filed a complaint in the Chancery Court for Marion County asserting that Kerr-McGee had dedicated the Coppinger right of way to public use, and seeking damages and an order requiring Mr. Brown "to open the roadway . . . ." The trial court conducted a bench trial at which it heard testimony relevant to whether the Coppinger right of way had been dedicated as a public roadway. Mr. Coppinger testified that, until Mead improved it in 1995, the logging road was virtually impassable. It was rutted with gullies, some of which were four feet deep and, according to Mr. Coppinger, even a four wheeler would have difficulty negotiating the terrain.

---

[4]The Coppingers erected the gates because they ran cattle on their property.

He admitted, though, that people did pass through the Coppinger right of way from time to time.[5] Mr. Newsom testified that, before Mr. Brown's arrival, he had freely used the Coppinger right of way for access to Sequatchie Road. Mr. Reece testified that, because his deed described the Reece property by reference to the logging road, he assumed that he would have access to the Coppinger right of way. He also testified that he used the logging road from the time he bought his property until Mr. Brown blocked access.

John Kunz, a licensed surveyor employed by Kerr-McGee until 1987, also testified. Mr. Kunz surveyed the property that Kerr-McGee conveyed to the Coppingers. Mr. Kunz testified that Kerr-McGee reserved the Coppinger right of way to ensure that Kerr-McGee, and any prospective buyer, would have access to Kerr-McGee's as yet unsold property directly south of the Coppinger tract, the property eventually purchased by Mr. Brown. Mr. Kunz also stated that the deed in which Kerr-McGee conveyed property to the Newsoms referred to the logging road only for the purposes of identifying the eastern boundary of the property being conveyed. Mr. Kunz testified that the deed did not grant to the Newsoms any right to access the logging road because that was never Kerr-McGee's intention.

Ruling from the bench, the trial court found that the Coppinger right of way stops at the Coppinger property line; that the Reeces would have to cross Mr. Brown's property to reach the logging road on the Coppinger right of way; that Kerr-McGee excluded from its conveyance to the Coppingers the property over which the Coppinger right of way passes solely for Kerr-McGee's own benefit; and accordingly, that the Reeces had failed to prove that Kerr-McGee dedicated the passageway to public use. On August 19, 1997, the trial court entered an order granting Mr. Brown's motion to dismiss the action pursuant to Tenn. R. Civ. P. 41.02 on the grounds that the Reeces failed to show that they are entitled to any type of relief.[6] The Reeces now appeal.

**I.**

The Reeces assert that the trial court erred in finding that Kerr-McGee did not dedicate the Coppinger right of way to public use, and by failing to require Mr. Brown to open the Coppinger right of way to the Reeces and to the general public. We have determined that the evidence does not preponderate against the trial court's finding that the Coppinger right of way is not a public roadway.

Because the trial court conducted this trial without a jury, we review its findings of fact de novo upon the record with a presumption of correctness, unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Stone v. City of McMinnville*, 896 S.W.2d 548, 550 (Tenn. 1995); *Town of Benton v. Peoples Bank of Polk County*, 904 S.W.2d 598, 601 (Tenn. Ct. App. 1995).

---

[5]Mr. Coppinger was unspecific on who these people were, how many passed through his property, and with what regularity.

[6]Mr. Brown moved to dismiss at the close of the Reeces' proof, and renewed the motion just before closing arguments.

Dedication arises from an owner's offer of land for public use, *see Stoker v. Brown*, 583 S.W.2d 765, 766 (Tenn. 1979); *Winn v. Tucker Corp.*, 848 S.W.2d 64, 68 (Tenn. Ct. App. 1992), and a public acceptance of the offer. *See West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d 365, 366 (Tenn. Ct. App. 1989). The offer and acceptance may be express or implied. *See Town of Benton v. Peoples Bank of Polk County*, 904 S.W.2d at 602; *Winn v. Tucker Corp.*, 848 S.W.2d at 68.

A party seeking to establish an implied offer of dedication must clearly and unequivocally prove the owner's intent to permanently part with the land and vest it in the public. *See Jackson v. Byrn*, 216 Tenn. 537, 543, 393 S.W.2d 137, 140 (1965); *McKinney v. Duncan*, 121 Tenn. 265, 271, 118 S.W. 683, 684 (1908); *City of Athens v. Burkett*, 59 S.W. 404, 408 (Tenn. Ch. App. 1900). Courts do not attempt to divine the owner's intent "kept concealed in the mind, but that which is manifest in the [owner's] visible conduct." *See Johnson City v. Wolfe*, 103 Tenn. 277, 282, 52 S.W. 991, 992 (1899); *Nicely v. Nicely*, 33 Tenn. App. 589, 594, 232 S.W.2d 421, 423-24 (Tenn. Ct. App. 1949). Accordingly, courts may infer intent from circumstantial evidence, including the owner's actions. *See Cole v. Dych*, 535 S.W.2d 315, 319 (Tenn. 1976); *Rogers v. Sain*, 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984).

The courts consider a number of factors when asked to determine whether a property owner intended to dedicate the land. These factors include: (1) whether the owner invited or acquiesced in the public's use of the property as a thoroughfare or roadway; (2) whether the public has maintained or repaired the roadway; and (3) whether the public has used the property for an extended period of time. *See Cole v. Dych*, 535 S.W.2d at 319; *Town of Benton v. Peoples Bank of Polk County*, 904 S.W.2d at 602; *Rogers v. Sain*, 679 S.W.2d at 453. However, unlike an easement by prescription, an implied dedication does not depend on use for any particular period of time. *See Johnson City v. Wolfe*, 103 Tenn. at 283-84, 52 S.W. at 992; *Scott v. State*, 33 Tenn. 629, 633 (1854).

In addition to proof of the owner's intention to dedicate the road to public use, persons seeking a judicial declaration that a road is public must prove that the road has been accepted for public use. This proof is relatively straightforward. A formal act by public authorities or common use by the general public constitutes sufficient evidence of the acceptance of an owner's offer of dedication. *See State ex rel. Matthews v. Metropolitan Gov't of Nashville and Davidson County*, 679 S.W.2d 946, 949 (Tenn. 1984); *West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d at 366.

The evidence does not preponderate against the trial court's determination that Kerr-McGee did not expressly or impliedly offer the Coppinger right of way for public use. The Reeces did not meet their burden of proving clearly and unequivocally that Kerr-McGee intended to permanently part with the land and vest it in the public. Messrs. Newsom and Reece stated that they had freely used the Coppinger right of way until Mr. Brown locked the cattle gates on either end. Although Mr. Coppinger testified rather vaguely that people have passed through the Coppinger right of way from time to time, he also stated that the Coppinger right of way was virtually impassable until 1995, when Mead improved it to facilitate its logging operations on Mr. Brown's land. This evidence does

little to prove extended public use, or that Kerr-McGee invited or acquiesced in the public's use of the property as a thoroughfare.

The Reeces suggest that the wording of the April 30, 1987 deed from Kerr-McGee to the Coppingers proves Kerr-McGee's intent to dedicate the Coppinger right of way.[7] The deed to the Coppingers excluded from the conveyance "an existing 50 foot wide unrestricted road right of way leading from the Sequatchie paved road through this property for excess [sic] to adjoining property, to the South . . . ." Focusing on the word "unrestricted," the Reeces contend that this reservation expressly or impliedly grants the public a right of way through the property. We cannot agree with this rather forced interpretation of the deed. Rather, we interpret the deed to give Kerr-McGee, and its successors in interest, an unrestricted right to traverse the Coppinger right of way to reach the property that Kerr-McGee still owned, and that Mr. Brown would soon own.

Our interpretation of the April 30, 1987 deed is buttressed by the testimony of Mr. Kunz, who surveyed the property that Kerr-McGee sold to the Coppingers. Mr. Kunz testified that Kerr-McGee retained the Coppinger right of way for its own purposes, rather than for the public. Kerr-McGee wanted access to the property to the south of the Coppinger tract for itself, and for any eventual buyer. Because Kerr-McGee did not offer the Coppinger right of way for public use, the public could not accept it,[8] and no dedication occurred.

---

[7]The Reeces also argue that Kerr-McGee manifested an intent to dedicate the Coppinger passage when it sold the Newsom tract by reference to the logging road. They rely on a quotation from C.J.S. which states that "[w]here an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use." 26 C.J.S. *Dedication* § 23a (1956). Immediately after the quoted language, though, this encyclopedia explains that it is referring to a situation "[w]here the owner of real property makes a plat of it and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city, in which his land is so laid off," and where "the reference is not made merely for the purposes of description." 26 C.J.S. *Dedication* § 23a at 440. Indeed, all of the Tennessee cases that we have found citing to or quoting this section were decided in the context of a recorded plat or of passageways included on the "Official Street and Alley Acceptance and Maintenance Map" maintained by the Metropolitan Government of Nashville and Davidson County. *See West Meade Homeowners Ass'n, Inc. v. WPMC, Inc.*, 788 S.W.2d at 364-66; *Smith v. Black*, 547 S.W.2d 947, 949, 951 (Tenn. Ct. App. 1976); *Varallo v. Metropolitan Gov't of Nashville and Davidson County*, 508 S.W.2d 342, 344, 346 (Tenn. Ct. App. 1973). The record contains no evidence that Kerr-McGee recorded a plat, and the language of the deed, combined with the testimony of Kerr-McGee's surveyor, Mr. Kunz, makes clear that Kerr-McGee's reference to the logging road was purely for the purposes of description.

[8]In any event, there is no evidence in the record of public acceptance.

-7-

It seems worth mentioning that, even if the Coppinger right of way were a public thoroughfare, the Reeces still would not prevail in their quest to use it for access to the eastern part of their property. Although the northeastern corner of the Reece property touches the southwestern corner of the Coppinger right of way, the Reeces have provided no evidence that they can reach the Coppinger right of way from their property without crossing either Mr. Brown's property or the property directly north of the Reece property. Nothing in the record suggests that the Reeces have a right of way over either of these properties. Moreover, the record contains uncontradicted evidence that, to reach the logging road, which is significantly narrower than the 50 feet wide right of way, the Reeces had to cross 30 feet of Mr. Brown's land.

## II.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to David Alton Reece and Connie Irene Reece and their surety for which execution, if necessary, may issue.