# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 22, 2014 Session

## RICHARD E. RIEGEL, JR. v. PATRICIA A. WILKERSON

**Direct Appeal from the Chancery Court for Madison County**
**No. 69727     James F. Butler, Chancellor**

---

**No. W2013-01391-COA-R3-CV - Filed February 11, 2014**

---

This is an easement case in which the Appellant, the servient estate owner, appeals the trial court's grant of injunctive relief in favor of the Appellee, the dominant estate owner. Specifically, the trial court found that Appellant had interfered with Appellee's use of the easement by erecting a gate across it. The trial judge ordered the Appellant to remove the gate, and enjoined her from further interference with the Appellee's use of the easement. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M., KIRBY, J., joined.

Scott G. Kirk, Jackson, Tennessee, for the appellant, Patricia A. Wilkerson.

Jay Dustin King, Jackson, Tennessee, for the appellee, Richard E. Riegel, Jr.

## OPINION

Appellee Richard E. Riegel, Jr. owns a tract of real property located at 385 Raines Spring Road in Jackson. Mr. Riegel purchased his property from Nancy Williams LaPlace on or about August 6, 2007. Mr. Riegel's approximately thirty-four-acre property is part of a one-hundred-acre tract that was purchased by Ms. LaPlace and her late husband from Mr. Billy Haynes. At the time the LaPlaces purchased the property, they entered into a Deed for Joint Easement with Mr. Haynes, which states, in relevant part:

> Haynes hereby grants and conveys to LaPlace a perpetual non-
> exclusive easement for ingress and egress over and across the

following described property [Exhibit "B" to the Deed for Joint Easement is a meets-and-bounds description of the 100 acres purchased by the LaPlaces; Exhibit "C" to the Deed for Joint Easement is a plat-map of the easement that is being conveyed].

TO HAVE AND TO HOLD said perpetual non-exclusive easement for egress and ingress, unto the said [LaPlaces], their heirs and assigns forever.

This easement for ingress and egress is for the benefit of the 100.00 acres conveyed by Haynes to LaPlace as recorded in Deed Book 575, Page 197. . . and this easement for ingress and egress shall run with the land and benefit this property and burden the property retained by Haynes [i.e., the fifty-acre tract, of which Ms. Wilkerson ultimately purchased a portion]. . . .

The Deed for Joint Easement was recorded in the Register's Office of Madison County in Deed Book 575, Page 199. The August 6, 2007 Warranty Deed from Ms. LaPlace to Mr. Riegel states that "[t]his property has access to and is subject to a joint ingress and egress easement as described in Deed Book 575, page 199. . . ." This easement is the subject of the instant appeal.

Appellant Patricia A. Wilkerson purchased her property from Paul and Kelly Little on or about March 27, 2003. Ms. Wilkerson's approximately six-acre property is part of a fifty-acre tract that was purchased by the Littles from Mr. Haynes. The Warranty Deed from Mr. Haynes to the Littles specifically states that the property is encumbered by a fifteen-foot-wide, ingress/egress easement:

The above property [i.e., the approximately six-acre portion of the fifty-acre tract purchased by Ms. Wilkerson] is encumbered by a 15 foot wide easement for egress and ingress along the north of a line from the southeast corner of the above described tract to a point south 84 degrees 38 minutes west 751.9 feet from the southeast corner.

This deed was recorded at Book 531, Page 328 in the Madison County Register's Office. The deed from Haynes to Little also references a second fifteen-foot, ingress/egress easement along the south property line. These "mirror" easements were granted to allow both the Littles and Haynes access to their respective properties. At trial, Mr. Little testified, in relevant part, as follows:

Q. Mr. Little, at the time you said that you bought the property,

the easement was created so that you and Mr. Haynes—Mr. Haynes would be able to get to his farmland and you would be able to build a house up there (i.e., the house that was ultimately purchased by Ms. Wilkerson)?

A. Yes, sir.

Q. Now, the boundary line between the property he sold you, the easement was 15 feet on either side of the boundary line is what I'm asking you.

A. Yeah.

\*\*\*

Q. So [Mr. Haynes] retained 15 feet, the ability to use 15 feet on your side of the property line; is that correct?

A. That's correct.

Q. And you retained 15 feet on [Mr. Haynes'] side of the property line?

A. That's correct.

Mr. Little further testified that although the original easements were fairly equally located on his and Mr. Haynes' property (i.e., approximately 15 feet on each), there were some erosion issues on Mr. Haynes' easement. When the LaPlaces purchased this property from Haynes, they did some work on the road and Mr. Little testified that as a result, the road was limited to ten-feet wide, with the majority of the road on his property, which was ultimately sold to Ms. Wilkerson. So, it appears from the record that although Haynes and Little each initially enjoyed a fifteen-foot easement on the other's property, the total of thirty-feet was eventually narrowed to just ten-feet of useable easement, which was located mostly on Ms. Wilkerson's side of the boundary line. Mr. Little testified that this road work was completed well before Ms. Wilkerson purchased the property from him. An August 18, 2006 survey performed by Jack McAdoo on behalf of Ms. Wilkerson (Trial Exhibit 5) indicates that although the used portion of the easement is more on Ms. Wilkerson's property, it does not extend past the original grant of a fifteen-foot easement on her side of the boundary line. Regardless, the easement (wherever it lies) is now used by both Ms. Wilkerson and Mr. Riegel to access their respective properties.

The Warranty Deed from the Littles to Ms. Wilkerson describes the property being conveyed, in relevant part, as "a portion of same real property conveyed to [the Littles], appearing of record in Deed Book 531, Page 328 in the Register's Office of Madison County." Although the deed from the Littles to Ms. Wilkerson references the conveyance from Mr. Haynes to the Littles, which as described above specifically notes the easement, the

-3-

deed from the Littles to Ms. Wilkerson does not specifically reference the easement recorded at Book 531, Page 328. Rather, Ms. Wilkerson's deed states that the property is unencumbered except for various utility and transmission line easements, and an "easement of record in Deed Book 182, page 343. . .," and a "[r]ight-of-way easement of record in Deed Book 171, page 549." The easement at issue in this case was recorded at Book 531, Page 328 and so is not specifically referenced in the Little to Wilkerson deed. Ms. Wilkerson avers, in pertinent part, that because her deed does not reference the easement, she cannot be held to abide by its terms.

According to the record, the easement was an old field road that was used by Mr. Haynes to access his property. After the Littles purchased the property, they used the easement for a driveway to their house, which was ultimately sold to Ms. Wilkerson. Ms. Wilkerson's driveway extends beyond the easement as it forks toward her property. After Mr. Riegel purchased his property, certain issues concerning the use of the easement arose between him and Ms. Wilkerson. As a result, on October 19, 2012, Mr. Riegel filed a complaint for temporary and permanent injunction against Ms. Wilkerson. The complaint specifically alleged:

> 4. [Ms. Wilkerson] and/or her agents have repeatedly interfered with [Mr. Riegel] and/or his agents['] ingress and egress to his property despite the fact that he is specifically granted an easement for the purpose of ingress and egress. [Ms. Wilkerson] has gone so far as to place a gate across the easement and disallow access to the property.
> 5. Furthermore, [Ms. Wilkerson] and/or her agents have trapped agents of [Mr. Riegel] in the property with the gate and [by] blocking his/her vehicle from behind with another vehicle in order to harass them by taking pictures and video.
> 6. [Ms. Wilkerson] and/or her agents have approached agents for [Mr. Riegel] in a threatening manner and continued to harass them as they tried to gain access to [Mr. Riegel's] property.
> 7. [Ms. Wilkerson] and/or her agents have repeatedly called the Madison County Sheriff's Department on tenants of [Mr. Riegel] and made it impossible for him to rent the property.

Based upon these factual averments, Mr. Riegel asked the court to grant a temporary and permanent injunction against Ms. Wilkerson, to enjoin her from interfering with his use of the easement.

After the trial court denied Ms. Wilkerson's motion for summary judgment (which

decision is not the subject of the instant appeal), the case was heard on May 6, 2013. By order of May 14, 2013, the trial court granted Mr. Riegel an injunction, requiring Ms. Wilkerson to remove the gate she had erected across the easement. The trial court also enjoined Ms. Wilkerson from further interfering with Mr. Riegel's use of the easement. On September 18, 2013, the trial court filed an amended order, denying attorney's fees to either party. The amended order states, in relevant part, that:

> There is an easement starting at Raines Springs Road which goes to the southwest along the boundary line for 751.9 feet. All parties who are dominant tenants have a right to use the easement. Both parties in this current action are considered dominant tenants and therefore have the right to use the easement.[1]
>
> The Court further finds that the driveway is within the boundary lines of the easement and can be used by either party.
>
> The Court further finds that this easement runs with the land and the fact that it is not in [Ms. Wilkerson's] Deed is irrelevant. It was of record prior to her Deed and the recording of the easement is notice to the world that the easement exists. [Ms. Wilkerson] is entitled to use the easement but cannot control it to the detriment of [Mr. Riegel]. The gate erected by [Ms. Wilkerson], whether locked or not, is an impediment to the use of the easement by [Mr. Riegel].
>
> The Court further finds that [Mr. Riegel's] use of the property is irrelevant. There are no restrictions stated in the easement regarding its use.

Based upon the foregoing findings, the court ordered Ms. Wilkerson to remove the gate within thirty days of the order, and also granted a permanent injunction, enjoining Ms. Wilkerson "from interfering with [Mr. Riegel's] right to use the easement. . . ."

---

[1] There is some confusion in the record as to which party is the servient tenant and which is the dominant tenant. The trial court refers to both Ms. Wilkerson and Mr. Riegel as dominant tenants. However, from our review, we conclude that Ms. Wilkerson's property is the servient estate in this case because the easement, as it is now used, lies primarily on her property. Initially, and as discussed above, there were "mirror" easements on both Mr. Riegel's property and Ms. Wilkerson's. However, due to erosion and the like, the parties' predecessors in interest began to use the fifteen-foot easement that ran across Ms. Wilkerson's property. In this regard, the current manifestation of the easement can be considered a joint easement as both parties use it for ingress/egress. However, initially, Ms. Wilkerson's property was the servient tenement; accordingly, we will call her the servient tenant and will call Mr. Riegel the dominant tenant for purposes of this appeal.

Ms. Wilkerson appeals. She raises two issues for review as stated in her brief:

> 1. [Mr. Riegel] failed to prove by a preponderance of the evidence that he was in need of injunctive relief.
>
> 2. Whether the trial court erred in finding [that Mr. Riegel] was entitled to injunctive relief.

In the posture of Appellee, Mr. Riegel asks this Court to award his attorney's fees and costs in defense of this appeal.

Because this case was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001).

The issues in this case involve the interpretation and use of an easement. An easement is "an interest in property that confers on its holder a legally enforceable right to use another's property for a specific purpose." ***Hall v. Pippin***, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998); *see also* ***Fowler v. Wilbanks***, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000); ***Pevear v. Hunt***, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). Such an interest in land can be created in a number of ways: (1) by express grant, (2) by implication, and (3) by reservation. ***Pevear***, 924 S.W.2d, at 115.

The easement in this case is undisputedly an express easement appurtenant. "An express easement is a grant of an interest in land which must comply with the requirements of the statute of frauds at Tenn. Code Ann. § 29-2-101." ***Smith v. Evans***, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at *2 (Tenn. Ct. App. Aug. 27, 2008) (citing ***Cellco P'ship v. Shelby County***, 172 S.W.3d 574, 593 (Tenn. Ct. App. 2005); ***Mitchell v. Chance***, 149 S.W.3d 40, 47 (Tenn. Ct. App. 2004); ***Nunnelly v. Southern Iron Co.***, 29 S.W. 361, 365–66 (Tenn. 1895). "To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license ." ***Smith v. Evans***, 2008 WL 3983117, at *2 (citing 25 Am.Jur.2d Easements and Licenses § 15 (2008); ***Adcock v. Witcher***, 1995 WL 675852 at *2 (Tenn. Ct. App. Nov. 15, 1995)). "The scope of such an easement is set forth in express

terms, either in the granting documents or as matter of incorporation and legal construction of terms of relevant documents . . . [.]" ***Smith v. Evans***, 2008 WL 3983117, at \*2 (citing 25 Am.Jur.2d Easements and Licenses § 15).  In an easement appurtenant, there are two tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement.  ***Cellco***, 172 S.W.3d at 588 (internal citations omitted).

"In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties." ***Burchfiel v. Gatlinburg Airport Authority***, No. E2005-02023-COA-R3-CV, 2006 WL 3421282, at \*3 (Tenn. Ct. App. 2006) (citing 28A C.J.S. Easements § 57 (1996)). The intention of the parties with regard to the purpose and scope of an easement conveyed by express grant is determined by the language of the deed. *See **Foshee v. Brigman***, 129 S.W.2d 207, 208 (Tenn. 1939) ("If the easement is claimed under a grant, the extent of the easement is determined by the language of the grant."). "[T]he easement holder's use of the easement must be confined to the purpose stated in the grant of the easement." ***Columbia Gulf Transmission Co. v. The Governors Club Prop. Owners Ass'n***, No. M2005-01193-COA-R3-CV, 2006 WL 2449909, at \*3 (Tenn. Ct. App. Aug. 21, 2006).  "[I]t is not a personal right, and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate. The purpose of this rule is to prevent an increase of the burden upon the servient estate, and it applies whether the easement is created by grant, reservation, prescription, or implication." ***Cellco,*** 172 S.W.3d at 596 (citing ***Adams v. Winnett***, 156 S.W.2d 353, 357 (Tenn. 1941) (internal quotations omitted)); *see **Rector v. Halliburton***, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at \*4 (Tenn. Ct. App. Feb. 26, 2003) (noting that easement owner may not materially increase the burden on the servient estate or impose a new and additional burden).

Here, Mr. Riegel asked the trial court to grant an injunction, ordering Ms. Wilkerson to remove her gate and to cease any future interference with his use of the easement. This request unquestionably placed the enforceability of the easement at issue. *See **Union Tanning Co. v. Lowe***, 148 Tenn. 407, 255 S.W. 712, 714 (Tenn. 1923) (holding that plaintiff must establish title in himself before he can enjoin trespass of that right); ***Smith Mech. Contr. v. Premier Hotel Devel.***, 210 S.W.3d 557, 565 (Tenn. Ct. App. 2006) (concluding that a party should bring underlying cause of action upon which the injunction would be based in the same action as the request for injunctive relief).  The question of whether the easement is enforceable as against Ms. Wilkerson is a question of law, which we will examine *de novo*.

Throughout these proceedings, Ms. Wilkerson has argued that because her deed does not expressly reference the disputed easement, *see supra*, her property is not servient to it. We respectfully disagree.  As explained in 25 Am. Jur. 2d Easements §93:

-7-

A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. On the other hand, a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land generally takes title free from the burden of the easement. This rule is broad enough to include all easements, whether created by implication, prescription, or express grant. However, one who purchases land burdened with an open, visible easement is ordinarily charged with notice that he or she is purchasing a servient estate.

Under the general rule that a purchaser of land subject to the burden of an easement takes the estate subject to the easement if he or she has notice of its existence at the time of purchase, the proper recordation of the instrument containing the grant of the easement is sufficient notice.

*Id*. (footnotes omitted); *see also* 25 Am. Jur. 2d Easements and Licenses § 96 ("As a general rule, if the dominant tenement is transferred in separate parcels to different persons, each grantee acquires a right to use easements appurtenant to the dominant estate, provided the easements can be enjoyed as to the separate parcels without any additional burden on the servient tenement."). Accordingly, although Ms. Wilkinson's deed from the Littles does not expressly mention the easement, it is well settled that the "grantee of a servient tenement takes the property subject to all duly recorded prior easements whether such easements are mentioned in the grantee's deed or not. . . ." 28A C.J.S. Easements §134; Tenn. Code Ann. § 66-26-102 (stating that recorded instruments are "notice to all the world from the time they are noted for registration."); *see also* **Goetz v. Knoxville, Power & Light**, 290, S.W. 409 (Tenn.1926); **Jones v. Ross**, 388 S.W.2d 640 (Tenn. Ct. App. 1963). It is undisputed that the predecessor deed to Ms. Wilkinson's, i.e., the deed from Haynes to the Littles, specifically states that the property is encumbered by the easement, and this deed was duly recorded in the Register's Office of Madison County. However, even if we assume, *arguendo*, that Ms. Wilkerson could not be charged with actual notice of the easement by recording, Tennessee case law indicates that an easement may be imposed on subsequent purchasers of a divided tract where the easement was created during the unity of title. For example, in **Barrett v. Hill**, No. 01A01-9806-CV-00295, 1999 WL 802642 (Tenn. Ct. App. Oct. 7, 1999), Barrett discovered that her sewer line was disconnected from the public utility. The line ran across the lot of Barrett's neighbor, Hill. Hill would not allow Barrett to reconstruct a line across Hill. *Id*. at * 1. Barrett sued Hill to enforce what she claimed was an implied easement to run her sewer line across Hill's property. *Id*. at *2. Both lots had once been part of a single tract

owned by Roy Byrn. Before Byrn subdivided the property, someone had installed a sewer line to service the Barrett lot across what became the Hill lot. *Id.* at *1. This court held that Byrn had created an implied easement across the Hill lot in favor of the Barrett lot:

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law. Similarly, where the owner of property, one part of which has been subjected to such a use for the benefit of another part, sells both parts to different purchasers, the respective portions granted are subject to or benefitted by, as the case may be, an easement corresponding to such use.

*Id*. at *3 (quoting *Lively v. Noe*, 496 S.W.2d 852, 854-55 (Tenn. Ct. App.1970)). This Court had "no difficulty" concluding that Byrn, the common grantor, had notice such that the easement would have been enforced against him. *Id*. at *4. The more difficult question was whether the easement created during Byrn's ownership could be enforced against Hill. The trial court held that Hill did not have notice, but this Court concluded that it did not matter– the easement was enforceable against Hill whether or not Hill had notice. *Id*. at *4. Our rationale was as follows:

> We think this question is answered in Tennessee by the nature of this easement. . . .
>
> * * *
>
> The easement created in this case is appurtenant to the land. An easement appurtenant attaches to, passes with, and is an incident of ownership of the parcel that is the dominant tenement. The successor in title to an appurtenant easement may enforce it. An incorporeal appurtenance to a parcel of land, such as an easement, passes with title to the land, and the successor in title becomes the owner of the use protected by the easement and has the right to enforce it.
> [E]asements by implication ordain the perpetuation of the prior use "on the general principle that property is usually passed along with its burdens." Where a single owner sells portions of

-9-

his or her property to two different purchasers, "the respective portions granted are subject to or benefitted by, as the case may be, an easement corresponding to such use." Thus, not only did the easement's benefits pass with title to the dominant tenement, but its burdens also passed with title to the servient tenement.

In conclusion, we find that an easement by implication was created at the time of the severance of ownership of the two parcels in 1970 by which the Barrett property has the right to use the Hill property for the purpose of running a sewer line to the city sewer line.... Because the easement is appurtenant to the Barrett property, this right to use the Hill property passed with the land and is enforceable by Ms. Barrett.

*Id.* at *5 (citations and internal quotation marks omitted). If the burden of an implied easement passes to a subsequent purchaser who may have no way of discovering its existence, on the basis of the *Barrett* case, we conclude that the burden of an express easement appurtenant would all the more so pass to a subsequent purchaser. At least in the case of an express easement, it could be discovered by looking at all conveyances made against the common tract by the common grantor. Accordingly, the trial court correctly held that Ms. Wilkerson could be charged with the burden of the easement. The next question is whether the evidence supports the finding that Ms. Wilkerson interfered with Mr. Riegel's use of the easement such that he was entitled to an injunction against her. We now turn to address that question.

## Interference with Easement

[T]he owners of the land under and surrounding an easement also have restrictions on the use of their land:

The owner of the servient estate, while he may use his property in any manner consistent with the existence of the easement, ... cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with.

28A C.J.S. Easements § 175 (1996).

The owner of the servient estate has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Charles v. Latham*, No. E2003-00852-COA-R3-CV, 2004 WL 1898261 (Tenn. Ct. App. Aug. 25, 2004) (citing *Cooper v. Polos*, 898 S.W.2d 237, 242 (Tenn. Ct. App. 1995)).

> Although the respective rights of the owners of the dominant and servient estates must be construed so as not to unreasonably interfere with each other, *Miller v. State*, 124 Tenn. 293, 137 S.W. 760, 35 L.R.A.N.S., 407 (1910), the owner of the dominant easement has all the rights incident or necessary to proper enjoyment of the easement. 25 Am.Jur.2d <u>Easements & Licenses</u> §§ 72–75. The use of the servient estate must be consistent with that of the dominant estate. *Brown v. Alabama Power Co.*, 275 Ala. 467, 156 So.2d 157 (1963).

*U.S. ex rel. and for Use of Tennessee Val. Authority v. Hughes*, 408 F.2d 619, 621(6th Cir.1969).

> In Tennessee, the rights of the owner of the easement are paramount to those of the landowner, at least to the extent of the easement. *Cox v. East Tennessee Natural Gas Co.*, 136 S.W.3d 626, 627–28 (Tenn. Ct. App.2003); *Carroll v. Belcher*, 1999 WL 58597, at *3. The owner of the servient estate cannot take actions that unreasonably interfere with easement holder's rights under the easement, including any alterations in the landowner's property. Cox, 136 S.W.3d at 628 (citing *Carroll v. Belcher*, 1999 WL 58597, at *3).

*Rogers v. Roach*, No. M2011–00794–COA–R3–CV, 2012 WL 2337616, at *9 (Tenn. Ct. App. 2012).

In order to prevail on a claim against a servient landowner for unreasonable interference with the use of an easement, the dominant landowner [here, Mr. Riegel] has the burden to show: (1) the "existence/creation of easement;" (2) "interference with the easement's use;" and (3) "actual damage to the easement holder's use." 20 Causes of Action 2d 177 (2002) (discussing the "Cause of Action for Servient Estate Owner's Unreasonable Interference with Easement of Way by Placement of Obstruction on Easement"). In addition, evidence, such as testimony, is required to establish the "unreasonable interference with the easement." *See* 20 Causes of Action 2d 177 (2002). We have previously determined that Mr. Riegel has a valid easement over Ms. Wilkerson's property, and that Ms. Wilkerson had notice of the existence of the easement through the recording of the Haynes to Little deed, or because the easement was made appurtenant to the land when the title was unified, *see* discussion *supra*. Accordingly, the remaining question is whether the preponderance of the evidence supports the trial court's finding that Ms. Wilkerson interfered with Mr. Riegel's use of the easement so as to justify the grant of the injunction against her.

Generally, in cases involving the unreasonable interference with a dominant landowner's use of an easement, the question "is whether, under the specific facts presented, the [obstruction] is necessary to the use and enjoyment of the landowner's land and whether it does not unreasonably interfere with the easement holder's use of the right of way." *Roach*, 2012 WL 2337616, at *9 (citing *Reynaud v. Koehler*, No. E2004-02999-COA-R3-CV, 2005 WL 1868816, *2 (Tenn. Ct. App. Aug. 8, 2005)). As in the instant appeal, the typical interference case involves the erection of fences or gates. In these cases, "an owner of land subject to a right-of-way easement may maintain gates, if necessary to his use and enjoyment and where such obstructions do not unreasonably interfere with the use of the way." *Cole v. Dych*, 535 S.W.2d 315, 320 (Tenn.1976). Thus, placement of an obstruction in an easement is not sufficient to prevail in an action for interference; instead, the dominant landowner must show that the obstruction "unreasonably interfere[s]" with the use of the easement. *Id*.

Furthermore, as discussed in detail above, both the servient tenement holder and the dominant tenement holder must abide by the purpose of the easement. *Columbia Gulf Transmission Co*., 2006 WL 2449909, at *3; *Cellco,* 172 S.W.3d at 596 (citation omitted); *Rector v. Halliburton*, 2003 WL 535924, at *4. It is undisputed that the easement at issue in this case is for ingress/egress and nothing more. Because the use of the easement is a relevant inquiry in cases involving alleged interference, we were initially troubled by the trial court's finding that Mr. Riegel's "use of the property is irrelevant. There are no restrictions stated in the easement regarding its use." After reviewing the record, however, we infer that the trial court was speaking of Mr. Riegel's use of the property in the future. Mr. Riegel currently lives out of state and has previously leased his property. At the time of the trial, there were no tenants on the land. However, Mr. Riegel testified that it is his desire to lease the property to a therapeutic, equine-riding center, which he described as a "501(c)(3) charity." Mr. Riegel opined that Ms. Wilkerson does not want his property to be used in this way, or in any commercial way, because of the additional traffic that a commercial or public use would generate. Mr. Riegel stated that he could not "put people on the property because they feel like they don't have access to the property without being challenged with the gate." As set out above, this easement is for ingress/egress only. However, there is no indication in the record that Mr. Riegel or his tenants have used the easement for anything other than its stated purpose. Although the trial court allowed Mr. Riegel to be cross-examined on the question of how many vehicles would use the easement should he open the commercial venture, this testimony was strictly hypothetical as Mr. Riegel has not (according to the record) taken any steps toward opening any business on the property. Consequently, the record does not contain any evidence that, at present, Mr. Riegel, his tenants, or invitees have unduly interfered with or burdened Ms. Wilkerson's reasonable enjoyment of her property. This Court is not prescient, and speculation is not within its purview. Accordingly, we cannot base our decision on some event that may occur in the future. In **this** appeal, we are concerned only with the question of whether Ms. Wilkerson's gate unreasonably interferes

with Mr. Riegel's **current** use of the easement.

Turning to the record, according to Ms. Wilkerson's testimony, she erected the offending gate prior to the date that Mr. Riegel purchased his property from the LaPlaces. Ms. Wilkerson stated that the gate was put up to deter people from coming to the stables located on the then-LaPlaces' property, which is now owned by Mr. Riegel. She stated that the gate had never been locked and that it could be opened by anyone that wanted to pass. However, the record clearly indicates that the gate is located on the easement and that one must get out of their car, open the gate, drive through, and then close the gate behind them in order to get to the Riegel property. When asked whether there is "any other way of ingress or egress to Mr. Riegel's property other than this easement . . . ," Bruce Richardson, a licensed surveyor who is familiar with the easement, testified that there is not another route to Mr. Riegel's property.

Mr. Riegel testified that his previous tenants had been harassed by Ms. Wilkerson when they attempted to use the easement, and that Ms. Wilkerson had told Mr. Riegel that he needed to "put in a new driveway south of her driveway." Ms. Wilkerson provided no evidence to contradict Mr. Riegel on this point. The record is clear that Mr. Riegel's property has an easement across the area where Ms. Wilkerson has put her gate; however, as correctly noted by the trial court, Ms. Wilkerson's driveway continues beyond the 751.9 foot easement. Therefore, there is room for her to move the gate onto her own property (outside the easement) if she wishes to protect her property from intruders or excessive traffic. Accordingly, the gate (in its present location) is not necessary to the use and enjoyment of Ms. Wilkerson's land so as to necessitate the interference it causes to Mr. Riegel's right of way. *Roach*, 2012 WL 2337616, at *9. This is particularly true in light of the lack of evidence concerning any undue burden to Ms. Wilkerson's property caused by excessive traffic, commercial use, and the like. From the totality of the circumstances, and the entire record in this case, we conclude that the evidence does not preponderate against the trial court's finding that Ms. Wilkerson's gate unduly interferes with Mr. Riegel's use of the easement. Accordingly, we conclude that the trial court did not err in requiring Ms. Wilkerson to remove her gate from its current location, or from enjoining her from interfering with Mr. Riegel's use of the easement in the future.

### Attorney's Fees

Mr. Riegel has asked this Court to award his attorney's fees and costs associated with this appeal. Tennessee Code Annotated Section 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any
> court of record was frivolous or taken solely for delay, the court

may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

However, "[i]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." **Henderson v. SAIA, Inc.**, 318 S.W.3d 328, 342 (Tenn. 2010). Although we have decided the issues before us in Mr. Riegel's favor, we are not persuaded that this appeal is frivolous or taken solely for delay. We, therefore, decline to award his attorney's fees and costs.

## Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Patricia A. Wilkerson, and her surety.

_____
J. STEVEN STAFFORD, JUDGE